## TEXAS MEXICAN RY. CO. v. HOY.
### (No. 1142—5433.)

Commission of Appeals of Texas, Section B.
Feb. 12, 1930.

A. R. Smith, of Laredo, and J. D. Dodson, of San Antonio, for plaintiff in error.

Phelps & Johnson and M. J. Raymond, all of Laredo, for defendant in error.

LEDDY, J. This was an action by next friend to recover damages for personal injuries sustained by Willie Hoy, a minor, on account of the collision of an automobile in which he was riding with a tank car which was standing at a point where plaintiff in error's main line crossed Guadalupe, one of the principal thoroughfares in the city of Laredo.

Negligence on the part of the railway company was alleged to be the failure to main-

tain a watchman at the crossing where the collision occurred to signal vehicular traffic of the approach of trains using the crossing and to display warning signals when such crossing was blocked by its cars.

It was alleged that when the car in which Hoy was riding approached the crossing there was a heavy rain falling and the street was in total darkness, save and except the lights from the headlights on the automobile; that because of the driving rain the headlights of the automobile could not penetrate the darkness to any distance, and because of such fact the automobile was driven violently in contact with the tank car of plaintiff in error, which was standing on and blocking the main line crossing.

It was averred that the automobile in which Hoy was riding was not under his control, nor did he have any right to direct the driver thereof; that at the time of the collision he was protecting himself against the driving rain storm by holding some old clothes over his head and shoulders, and that he knew nothing of the collision until he felt the violent shock thereof.

Plaintiff in error pleaded that the injured party knew of the presence of its track at Guadalupe street, and that trains and cars were operated across the same at uncertain hours, and that it was a point and place of danger, and, with knowledge of such fact, he failed to exercise ordinary care for his own safety, and was thereby guilty of negligence causing or contributing to cause the injuries of which he complains; that he had actual knowledge of the failure of the driver in charge of the car to exercise ordinary care in approaching the crossing, and that he made no effort to cause said driver to cease operating said car at a dangerous and reckless speed, taking into consideration the surrounding conditions, and that such conduct on his part was negligence which caused or contributed to bring about his injuries.

After hearing the evidence offered by defendant in error, the trial court sustained plaintiff in error's motion for an instructed verdict, which was accordingly returned.

Plaintiff in error insists that the undisputed facts leave no room for disagreement among reasonable minds that Hoy's own negligence caused or contributed to cause the injuries received by him.

After a careful review of the facts disclosed by the record, we have reached the conclusion that plaintiff in error's insistence in this respect is well taken, and must be sustained.

It is shown by the evidence that the injured party was thoroughly familiar with the railroad crossing where the accident occurred and knew that trains or cars might be using or occupying the same at any time of the day or night. He testified that he trusted to the driver to drive as he pleased, at a time when he knew, or in the exercise of reasonable care should have known, that a driving rain so obscured the vision ahead that an object could not be seen at any appreciable distance. His own testimony shows an utter failure to exercise any degree of care whatever for his own safety. This fact is apparent from the following testimony given by him: "I did not say a thing in the world to the driver anywhere along the road between the gas station and the railroad track with reference to the speed the car was making, in view of the fact that the weather conditions were such that they did not show an object in the road. I just trusted everything to him to drive fast or slow as he pleased, and he would know how to take care of the situation."

All of the testimony shows that the car in which Hoy was riding was running at a speed of at least 20 miles an hour when it struck the tank car standing on the railroad crossing. Mack Seliski, the driver of the car, gave the following testimony with reference to the speed the car was being operated at the time of the collision:

"I was not exceeding the speed limit when I struck the railroad car. I would say I was going about twenty miles an hour. * * * I did not see the oil tank car before we struck it. The brakes on the car were all right. It had good brakes and our lights were all right.

"Willie Hoy did not make any suggestion to me about because of the violence of the rain and the fact we could not see at all driving toward the railroad yard that I had better get down under twenty miles an hour; he did not say anything to me. I was driving along something like twenty miles an hour although it was raining so hard that I could not see a tank car in front of the automobile headlight.

"I had the car down to about twenty miles an hour when I hit the tank car. I do not remember whether I slowed down or not. I was just coming down that hill that night about twenty miles an hour. From the experience I have had in driving cars I will say that I was going about twenty miles when we hit the tank car."

As to Hoy's conduct before the collision occurred, Seliski testified: "Willie Hoy covered his head up with his pants when we left the filling station. He covered his head up with his pants. He did not pull off his pants to cover it up. He had two pairs with him. * * * He did not have anything else on his head besides that extra pair of pants. I do not know whether he had the pants fixed so his eyes were exposed to the rain or not. * * * He had them over his head is all I know."

Hoy admitted upon the trial that he told his attorneys and his next friend before the suit was filed that at the time of the collision he was protecting himself against the driving

rain storm by holding some old clothes over his head and shoulders, and that he did not know anything about the collision until he felt the shock. In other portions of his testimony he stated that in covering his head to protect himself from the rain he left his eyes exposed so that his vision ahead was not obstructed.

That the party driving the car was guilty of contributory negligence as a matter of law is too plain for discussion. It is claimed, however, that the negligence of the driver cannot be imputed to Hoy, as it appears Seliski was taking him home as a matter of accommodation. It is generally held that under such circumstances the negligence of the driver of the car cannot be imputed to his guest. Davis v. Pettitt (Tex. Com. App.) 258 S. W. 1046; West v. Bruns (Tex. Civ. App.) 294 S. W. 235; Eastern Tex. Elec. Co. v. Smith (Tex. Civ. App.) 298 S. W. 314.

Even though a person riding in an automobile driven by another is not chargeable with the driver's negligence, he is not absolved from the exercise of personal care for his own safety. He rests under the duty of exercising such care to avoid injury as would have been used under the attendant circumstances by an ordinarily prudent person. Texas City Terminal Co. v. Showalter (Tex. Civ. App.) 257 S. W. 621.

While a guest is not ordinarily required to exercise the same quantum of care and caution as the driver of an automobile, yet, if he sits by without warning or protest, and knowingly permits himself to be driven carelessly to his injury, he should be held guilty of contributory negligence. Parramore v. Railway Co. (C. C. A.) 5 F.(2d) 912.

The occupant of a vehicle should not be permitted to abandon the exercise of his own faculties and intrust his safety absolutely to the driver when he knows the vehicle in which he is riding is being driven in a careless and reckless manner into a known place of danger. Boland v. Railway Company (Mo. Sup.) 284 S. W. 141.

In this case it appears either that the injured party disabled himself from exercising any degree of care whatever by covering his head with clothing, or that he sat silently and permitted the driver of the car to operate the same at such a rapid and dangerous rate of speed, in view of lack of visibility on account of weather conditions, that a collision was inevitable if the railroad crossing was occupied by cars. In either event his conduct was such as rendered him guilty of contributory negligence as a matter of law. Phillips v. Davis (C. C. A.) 3 F.(2d) 798, 40 A. L. R. 1241.

Defendant in error knew that it was necessary to cross the railway tracks on the way to his home. With knowledge of such fact he could not cover up his head and trust all to the driver of the car. If his vision was not obscured when approaching the crossing, then he was chargeable with knowledge of the fact that such crossing might be blocked with cars, and that the driving rainstorm prevented either of the parties in the car from seeing cars standing on the crossing at such a distance therefrom as would enable the driver of the car to avoid a collision. If he was willing under the circumstances to remain silent and take such a chance, he ought to be required to do so at his own risk and not at that of the railway company.

It is claimed, in view of the fact the injured party knew the railway company maintained a watchman at the crossing, that he had a right to rely upon proper warning signals being displayed if the crossing was blocked with cars. While we agree, such fact may properly be taken into consideration in reaching a decision as to whether a person approaching a railway crossing is guilty of contributory negligence, yet the same cannot be used as a complete means of reliance to excuse a passenger in an automobile from exercising any degree of care for his own safety and protection.

We think the facts proven negative the exercise of any reasonable degree of care on the part of the injured party in approaching the crossing; hence the trial court properly instructed the jury to return a verdict for the defendant.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the trial court affirmed.

CURETON, C. J. The judgment of the Court of Civil Appeals is reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.