## MURPHY v. MILHEISER.
### No. 9427.

Court of Civil Appeals of Texas. Galveston.
June 26, 1930.

Rehearing Denied July 17, 1930.

Thomas, Storey & Grady, of Dallas, for appellant.

Hunt & Hunt and H. G. Butts, all of Houston, for appellee.

GRAVES, J.

With only slight interpolations looking to greater accuracy, this substantially correct statement is taken from appellant's brief:

"This suit was filed by Mrs. Minerva Murphy, as surviving wife of Charles A. Murphy, deceased, against Arthur J. Milheiser, Independent Executor of the estate of Clarence Frederick Milheiser, deceased, alleging that her husband was riding in a Packard Straight Eight automobile as a guest of Clarence Frederick Milheiser, on or about August 18, 1928, from Galveston, Texas, to Houston, Texas, and that Milheiser negligently operated the automobile in many particulars, principally excessive speed and failure to keep a lookout, and as a direct and proximate result of such negligence of Milheiser, deceased, the car was turned over and fell upon them, killing both, and appellant as the dependent widow of Murphy sought damages in the sum of $25,000.00 for the death of her husband.

"Appellee answered by general demurrer and general denial, and specially plead contributory negligence of the deceased Charles A. Murphy, based upon his failure to make any protest at the excessive speed of the car, and that Milheiser and Murphy were on a joint enterprise in returning to Houston from Gal-

veston, Texas, wherefore the negligence of Milheiser was imputable to Murphy.

"The case was tried before a jury, the defendant making his motion for an instructed verdict at the close of plaintiff's evidence, which was overruled; it was then submitted upon special issues, and the jury found that Milheiser was guilty of negligence in two particulars, one in exceeding the speed limit, and the other in failing to keep a proper lookout, each of which grounds of negligence was the proximate cause of the death of Murphy. The jury further found that Charles A. Murphy, deceased, did not exercise ordinary care in failing to protest as to the speed of the car, but further found that such negligence was not the proximate cause of his death. The jury assessed damages at $25,000.00.

"After the verdict was returned, both appellant and appellee filed respective motions for judgment, relying upon the verdict of the jury as a basis therefor. The trial court overruled the motion of appellant and sustained the motion of appellee. Judgment was therefore entered in favor of appellee that appellant take nothing and that appellee recover all costs.

Appellant filed a motion to set aside the judgment in favor of appellee, which was overruled by the Court. Appellant also filed a motion to set aside the court's former order denying the motion for judgment in her favor, and again prayed that the court enter judgment in her favor, which motion was overruled. Exceptions were reserved to the rulings of the court, and appellant has perfected her appeal."

At the close of the evidence for both sides, the defendant further sought an instructed verdict by then specifically objecting to the submission of any issues to the jury, "because the evidence shows without dispute that the deceased, Charles A. Murphy, was guilty of contributory negligence in not protesting as to the excessive rate of speed of the automobile in which he was riding at the time of the fatal accident, and any issues which might be submitted are immaterial."

In this court appellant very ably contends:

First, the cause having been submitted on special issues to the jury, who found that Milheiser was guilty in two particulars of negligence proximately causing the death of Murphy and assessed the resulting damages in her favor, it became the bounden duty of the trial court to enter judgment for her on that verdict, it not having been set aside and no motion to that end having been made; second, the pleadings and undisputed evidence having raised such an issue against each of the deceased, and the verdict having found both to have been guilty of negligence, it was the jury's further province to determine which negligence proximately caused Mur-

phy's death, and it having resolved that issue in her favor by the finding that his own did not so cause it, but that Milheiser's negligence did, she was in consequence entitled to a judgment against the appellee.

Neither presentment, we conclude, should be sustained; in so determining, we temporarily start toward the east by way of the west by preliminarily holding, in response to appellant's second contention, that the uncontroverted evidence showed Murphy to have been as a matter of law guilty of contributory negligence proximately causing his own death, which development made improper the entry of any other judgment than the one adverse to appellant that was rendered, wherefore all issues submitted to the jury were immaterial, and the general rule she first invokes as pursuant to R. S. art. 2209, does not apply. Long v. McCoy et al. (Tex. Civ. App.) 294 S. W. 633; City of San Antonio v. Salvation Army (Tex. Civ. App.) 127 S. W. 860; American Surety Company of New York v. Hill County (Tex. Com. App.) 267 S. W. 265; Magnolia Petroleum Co. v. Connellee et al. (Tex. Com. App.) 11 S.W.(2d) 158.

Recurring to that second question for the material facts about it, the undisputed evidence showed: There were three occupants on the one seat of Milheiser's roadster automobile on that fateful afternoon; he himself on the left side, driving, Mr. Weisen on the outside to his right, Mr. Murphy sitting between them directly behind the car's speedometer, the three being close friends from boyhood, working for the same organization, and going on a pleasure ride together from Galveston to Houston, the other two being Milheiser's guests. Weisen alone survived to tell the story of the accident, testifying among other details:

"Just immediately prior to the accident in question in my judgment the Milheiser car was traveling 80 miles an hour, I had seen the speedometer on the car after we left Galveston and the last time I saw it, it was registering 80 miles an hour. The top of this car, which was of the roadster type, was down. * * * There was plenty of room in the seat for the three of us to sit comfortably."

"I did say I had noticed speedometer of this car and it showed 80 miles per hour. I do not know how far it is from Galveston to a point about four miles this side of League City where the accident occurred, but something like in the neighborhood of 25 or 30 miles. Mr. Milheiser had been maintaining that speed of 80 miles an hour from the time after we left the causeway, I think almost all the way until the accident happened—that is around that speed. The causeway is just a few miles this side of Galveston. When I say 'around that speed,' I mean 70 or 80 miles per hour; and I would say he had maintained that speed from there (causeway)

clear up to the time of the accident. I was sitting where I could see the speedometer; it was in plain view of me where I was sitting on the right side of the car. It was likewise in plain view of Murphy. I did see the speedometer and saw that it was standing at or around 80 miles an hour just before the accident. I made no protest to Mr. Milheiser about the speed at which he was running, nor did Murphy make any to my knowledge. We three were sitting in the seat side by side, Murphy being between us. I did not hear Murphy make any protest as to the speed Milheiser was running; if he did and I had been listening, I would have heard him. * * * I could not say whether Mr. Murphy did or did not make protest as to the speed we were running; I can't say he did and I can't say he did not. If he made a protest perhaps I would have known something about it, I can't say as to that. I had the opportunity to make the protest from the time we left the causeway until the time of the accident; we each had that opportunity, I know I made no protest about it and if Murphy made any, I don't know it.

"I do drive an automobile. I drive a Studebaker. Mr. Murphy also had a Studebaker. * * * The Studebaker Mr. Murphy owned was a Victory Sedan, six cylinder, the same as I have. I do not know how long he had owned that car. I was not in Dallas when he owned it. He has always had an automobile I think. In other words he was a man about town like me and Mr. Story and Mr. Hunt here, who ride and drive automobiles practically every day. I know something about operating automobiles and about the speed of them, and I know he, Murphy, knew about the operation of them."

Another witness testified, in substance, to being familiar with Milheiser's car, its being kept in good condition capable of going 80 miles per hour by having it inspected regularly each week, and that when traveling at 80 miles an hour the speed is such as to cause quite a sensation; that the noise of the car and the roar of the motor and the wind whistling by one's ears is certainly calculated to inform you that you are moving, and that there can be no question about one's realization of that fact; that you may not know how fast you are going, but you do know that you are going at a terrific rate of speed.

After assuming as established facts, with the acquiescence of both litigants, first, that Milheiser had been driving at the time in question at the rate of 70 or 80 miles per hour, and, second, that Murphy made no protest to him with reference to such speed, the able and experienced trial judge, through special issues, then asked the jury: (1) Was the rate of Milheiser's speed the proximate cause of Murphy's death, (2) did Milheiser fail to keep a proper lookout ahead for other

vehicles, (3) was such failure, if any, negligence, and if so, was it the proximate cause of Murphy's death, (4) what sum of money would reasonably compensate plaintiff, etc., (5) would an ordinarily prudent person in Murphy's situation at the time, in the exercise of ordinary care for his own safety, have protested to Milheiser with reference to such excessive rate of speed, and, if so, (6) was such failure to protest the proximate cause of Murphy's death—to (1), (2), (3), and (5) of which the jury answered: "Yes, to the (4) $25,000.00," and to (6), "No."

Upon what we regard as no more nor less than the legal equivalent of the uncontroverted state of facts thus here obtaining, great courts throughout the American Union, including the Texas Commission of Appeals in the recent case of Railway v. Hoy, 24 S.W. (2d) 18, almost if not quite without exception, have determined acts not different in effect from that of appellant's unfortunate husband in this instance in not protesting to his driver host against the obviously dangerous speed at which he was being driven at the time, which failure to protest must on this appeal be taken to have been an established fact, to constitute as a matter of law such contributory negligence as proximately caused the guest's own injury or death and barred any recovery therefor; it would be like carrying coal to Newcastle, or essaying to retouch with more appealing color Gainsborough's "Blue Boy," to here undertake to add anything to the expressed considerations upon which those tribunals have rested that conclusion, and this court deems it sufficient to merely cite the comprehensive list of such holdings as collected by the able counsel for the appellee in their brief: Naglo v. Jones, 115 Kan. 140, 222 P. 116; Kirby v. Ry. Co., 106 Kan. 163, 186 P. 744, 18 A. L. R. 299; Stephenson' Adm'x v. Sharp's Ex'rs et al., 222 Ky. 496, 1 S.W.(2d) 957; Dedman v. Dedman, 155 Tenn. 241, 291 S. W. 449; Smith v. Ozark Water Mills Co. (Mo. App.) 238 S. W. 573; Milner's Administrator v. Evansville Rys. Co., 188 Ky. 14, 221 S. W. 207; Burton v. Pryor (Mo. App.) 198 S. W. 1117; Sackett v. Chicago Great Western Ry. Co., 187 Iowa, 994, 174 N. W. 658; Howe v. Corey, 172 Wis. 537, 179 N. W. 791; Lavine v. Abramson, 142 Md. 222, 120 A. 523; Brommer v. Penn. Ry. Co., 179 F. 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924; Huddy on Automobiles (6th Ed.) § 694; Bauer v. Tougaw et al., 128 Wash. 654, 224 P. 20; Rebillard v. Ry. Co. (C. C. A.) 216 F. 503, L. R. A. 1915B, 953; Morris v. Ry. Co., 101 Neb. 479, 163 N. W. 799; Joyce v. Brockett, 205 App. Div. 770, 200 N. Y. S. 394; Routledge v. Rambler Automobile Co. (Tex. Civ. App.) 95 S. W. 749; G. C. & S. F. Ry. Co. v. Gaddis (Tex. Com. App.) 208 S. W. 895, 896; S. A. & A. P. Ry. Co. v. Singletary (Tex. Civ. App.) 251 S. W. 325; I. & G. N.

Ry. Co. v. Edwards, 100 Tex. 22, 98 S. W. 106; M.—K.—T. Ry. Co. v. Cheek (Tex. Civ. App.) 18 S.W.(2d) 804; Tex. Mex. Ry. Co. v. Hoy (Tex. Com. App.) 24 S.W.(2d) 18; Parramore v. Ry. Co. (C. C. A.) 5 F.(2d) 912; Phillips v. Davis (C. C. A.) 3 F.(2d) 798, 40 A. L. R. 1241.

While in general it is held that the question of proximate cause is for the jury, along with and to the same extent as all others the evidence in the particular case raises issues of fact about, as is reflected by the authorities relied upon in this connection by appellant, the rationale of the decisions cited herein, supra, is that, on the coming in of special and one-way-tending facts like these—the deceased, Murphy, in this instance having in legal effect made the inordinate and inherently dangerous speed of the driver, which the undisputed proof showed constituted the proximate cause of the catastrophe, his own through his failure to protest against it during its unbroken continuance for more than 20 miles—all issuable facts as such faded, and the appellee became entitled as a matter of law to the judgment rendered, irrespective of any finding of the jury.

An affirmance has therefore been ordered. Affirmed.