FORD MOTOR COMPANY V. STELLA D. MADDIN ET AL.

No. 6117. Decided November 28, 1934.
(76 S. W., 2d Series, 474.)

132

Turner, Rodgers & Winn, of Dallas, Spell, Naman & Howell, of Waco, Black & Graves and Chas. L. Black, all of Austin, for plaintiff in error.

Under the circumstances of this case Maddin was guilty of contributory negligence as a matter of law in failing to protest, remonstrate with or caution the driver and in permitting himself to be driven under conditions, the hazards of which were as well known to him as to Atwell (the driver), or were as ascertainable by him as by Atwell.

Under the uncontroverted facts, it appeared that Maddin exercised no care for his own safety and, therefore, is guilty of contributory negligence as a matter of law. Maney v. Ford Motor Company, 232 N. W., 393, 70 A. L. R., 1315; Davis v. Chicago, R. I. & P. Ry. Co., 159 Fed., 10; Howe v. Corey, 172 Wis., 537, 179 N. W., 791; Galveston, H. & S. A. Ry. Co. v. Kutac, 72 Texas, 643, 11 S. W., 127; Boltinghouse v. Thompson, 12 S. W. (2d) 253; Peck v. Peck, 99 Texas, 10, 87 S. W. 248.

The uncontroverted facts show that Maddin and Atwell were engaged upon an enterpise for their own and their respective employers' common benefit with the express and implied equal right of control over each other as to the matter of their transportation and in the operation of the car and were engaged in a joint enterprise. Accordingly, Atwell was the agent of Maddin in the act of driving the car and the negligence of Atwell is imputed to Maddin and in this suit against a third person, the Ford Motor Company, such negligence will bar a recovery.

Atwell was the agent of Maddin in the act of driving said car notwithstanding Atwell's general employment by the Ford Motor Company, and, accordingly, the doctrine of *"respondent superior"* does not apply and no recovery can be had as against the Ford Motor Company on account of Maddin's death. Frisorger v. Shepse, 230 N. W., 926; Dallas Ry. Co. v. Alexander, 23 S. W. (2d) 512; Blanch v. Villiva, 22 S. W. (2d) 490; Rio Bravo Oil Co. v. Matthews, 20 S. W. (2d) 342; El Paso Electrict Co. v. Leeper, 60 S. W. (2d) 187.

*Richey & Sheehy,* of Waco, for defendants in error.

Maddin was not guilty of contributory negligence as a matter of law and the issue of contributory negligence was properly submitted by the court to the jury. 5 Texas Jur., 785, 790; 42 C. J., 1169-1173; 2 Bashfield's Enc. of Automobile Law, ch. 52, p. 1109; D. & H. Truck Line v. Hopson, 4 S. W. (2d) 1013; Texas Interurban v. Hughes, 34 S. W. (2d) 1106.

Atwell as agent of the Ford Motor Company had a superior right under contract to drive and control the car. Maddin had no right to direct or control the operation of the car and the question of joint enterprise was a question of fact which was properly submitted by the court to the jury. 5 Texas Jur., 175; 42 C. J., 1179; City of Vernon v. Lisman, 17 S. W. (2d) 769; Offer v. Swancoat, 27 S. W. (2d) 899.

MR. JUDGE RYAN delivered the opinion of Commission of Appeals, Section B.

Mrs. Stella D. Maddin and her minor son, Eugene Maddin, obtained judgment in the district court of McLennan County against the Ford Motor Company, in the aggregate sum of $40,000.00 damages occasioned by the death of T. E. Maddin, husband of Stella and father of Eugene, which judgment was affirmed by the Court of Civil Appeals. 42 S. W. (2d) 165.

Plaintiff in error, the Ford Motor Company, was on August 1, 1928, a manufacturer of Fords and Lincoln automobiles and maintained a branch office in Dallas where it assembled and

sold such cars. D. C. Woods was head of the Lincoln car department and Snyder Atwell the traveling representative. The Dallas office appointed certain designated dealers in its territory which embraced a large portion of the North half of the State, to sell the Lincoln cars, and at times there were approximately two hundred and forty-one such dealers who dealt with the Dallas office, one of them being the Cruger Company (a corporation) situated at Waco, Texas.

Each dealer was required to purchase for himself and keep in use at all times a suitable and adequate supply of new Lincoln automobiles for the sole purpose of demonstration and exhibition to prospective purchasers and to maintain same at all times in proper running condition and good clean order and repair.

T. E. Maddin, the deceased, was a salesman in the employ of the Cruger Company in charge of the sale and demonstration of Lincoln cars.

It was the duty of Mr. Atwell to visit said dealers from time to time and inspect the cars which were being used as demonstrators and see that same were kept in good repair, to do which, he testified "it was necessary that I drive the car belonging to the dealer, the demonstrating car, and as a rule we drive the demonstrator." It was his duty to assist the local dealers in the sale of Lincoln cars and whenever he or the Ford Motor Company learned of a prospective purchaser of a Lincoln car he took the matter up with the local dealer in that territory.

Mr. Atwell testified further:—"I took my orders from D. C. Woods; I was not employed by any other person or concern than the Ford Motor Company; I was not in any way connected with the Cruger Company; it never attempted to assume any control over my duties. In demonstrating Lincoln cars which belonged to the dealer and which we were attempting to sell and in making trips for the purpose of demonstrating, Mr. Woods and I drove the Lincoln cars, that was the custom and habit we had in connection with our employment; we had to do that in order to check the demonstrating quality of the job; it was part of my duty to ascertain whether or not the particular Lincoln car owned by the local dealer was in good running order and I did that."

We copy from the statement of the case by the Court of Civil Appeals, substantially, as follows:—

On August 1, 1928, Atwell and Woods having learned of a prospective purchaser of a Lincoln car, at Lampasas, came to Waco, informed the Cruger Company of the prospective purchaser, obtained the demonstrating car in question, and ac-

companied by Maddin, left for Lampasas to make a sale of the car. All three men had previously driven the car and were familiar with it and its operation. On the trip out Woods drove the car to Belton and either Maddin or Woods drove it from there to Lampasas. The car was not sold and on the return trip Atwell drove the car the entire distance from Lampasas to a point within about four miles from Waco, the place of collision with a White truck parked on the side of the road, which resulted in the death of both Maddin and Woods.

While at Lampasas some work was done on the car by a mechanic adjusting the lighting system. On the return trip the parties ate their evening meal at Temple.

Atwell testified that on the trip to Lampasas, as well as on the return trip, the car was driven at a rate of speed of from forty to fifty miles an hour; that they could tell when the car was going from forty-eight to fifty miles because at that rate the car would make a peculiar roar showing or indicating that it was running at that rate; that he was an experienced driver, familiar with the Lincoln car and with the highway between Temple and Waco; before he reached Lorena he turned on the lights of the car, which were not in perfect condition but sufficient for him to drive by; there were no cars coming toward him and none behind him with lights, to either hinder or help him in seeing; that just before the collision, he came up a hill or incline and as he came over the top of the hill he saw a Ford truck headed toward Temple parked on his (Atwell's) left hand side of the road and on the Ford truck's right hand side; in order to keep from hitting the Ford truck he turned his car to the right, thereby placing his car farther on the right hand side of the highway, when he then for the first time saw the White truck parked on the right hand side of the road headed toward Waco, the way he (Atwell) was going; that in his opinion the White truck was not more than thirty or forty feet from the Ford truck and same was parked in such a way that he was not able, at the rate of speed he was driving, to avoid colliding with the White truck; that he struck the left rear end of the White truck with the right front end of the Lincoln car.

The testimony tends to show that the Ford truck had stopped on its right hand side of the road by reason of a flat casing; that the inside or left wheels thereof were from eight to twenty inches on the hard-surfaced portion of the road and the remainder on the gravel or shoulder side; that the White truck going toward Waco had, by reason of engine trouble,

stopped about two hundred feet from the Ford truck and was parked on its right hand side of the road with the inside or left wheel extending from eight to twenty inches on the hard-surfaced portion of the road; that at said point the hard-surfaced portion of the road was fifteen feet wide and the gravel portion on each side was five feet, making the total width of the road twenty-five feet; that if the Ford truck and the White truck, under the most favorable aspect of the testimony, had been standing opposite each other, there would have been a space between them of from ten to thirteen feet. Neither of said trucks had any lights on either the rear or front thereof. They had been parked in said position for about two hours at the time of the collision, waiting for assistance to come from Waco. During the two hours the trucks had been so parked, a large number of automobiles, including the Greyhound bus, had passed along the highway between said trucks, said cars being driven according to witnesses, at all rates of speed from slow up to the limit of the law. It became sufficiently dark for Atwell to, and he did, turn on his car lights some ten or fifteen miles before he reached the place of the collision.

The trial court submitted fifty-nine special issues to the jury who found in response thereto, that Atwell was driving the car at more than thirty-five miles per hour, and that he was attempting to pass the truck at a greater rate of speed than fifteen miles an hour—each of said acts at the time was in violation of the criminal statutes. The jury found that each of said acts was a proximate cause of the injury. The jury further found that Atwell was driving the car at a dangerous rate of speed, without sufficient headlights, and that he failed to keep a proper lookout, and that each of said acts was negligence and a proximate cause of the injury. The jury further found, in response to pleadings by plaintiff in error, that the injury was not the result of an unavoidable accident; that plaintiff in error had not loaned Atwell to the Cruger Company to assist it in making a sale of the car; that Atwell and Maddin were not engaged in a joint enterprise; that Maddin did not have an equal right with Atwell to control the driving and operation of the car at the time of the collision; that the failure of the Ford truck or the White truck to have lights burning was not the proximate cause of the collision; that the way in which the Ford truck and the White truck were parked on the highway was not negligence; that the way said trucks were parked did not obstruct the free passage of automobiles on said highway; that their being parked in the way they were, without

lights, did not constitute a dangerous situation on the highway; that Maddin was not negligent in failing to request Atwell to decrease his speed; that Maddin did not acquiesce in, or approve of the speed Atwell was driving; that Maddin did not fail to keep a proper lookout; that Maddin was not guilty of negligence in failing to remonstrate or caution Atwell with reference to the speed the car was being driven; that Maddin was not negligent in failing to discover the trucks.

Plaintiff in error contends here, that the trial court should have given its requested peremptory instruction, and the Court of Civil Appeals erred in not so holding,

1st. Because the deceased, Maddin, was guilty of contributory negligence as a matter of law in failing to protest, remonstrate or caution Atwell, and in failing to exercise any care for his own safety;

2d. Because he assumed or incurred whatever risk was incident to the known situation under the known circumstances on the occasion in question; and,

3d. Because Atwell and Maddin were engaged in and upon a joint enterprise in which the negligence of Atwell would be imputed to and be the negligence of Maddin.

To sustain that contention we must find its affirmative, as a matter of law; if the evidence raises a fact question, the jury's findings against plaintiff in error must be respected and the judgment affirmed in so far as said contention is involved.

It was testified by Mr. Mitchell, a managing official of the Cruger Company, that prior to the trip in question, Maddin asked him "if it was all right for Mr. Atwell to drive the car when they were out, that Atwell did not take care of the car as he thought it ought to be taken care of and he wondered if it would be all right to let him drive it," The reply being that "there is no way out of it than to let him drive the car," that "he did not see any way out of letting Mr. Atwell drive the car." "We had this discussion before this happened possibly two or three weeks." At another place in Mr. Mitchell's testimony, he said that Maddin asked him if he would tell Mr. Atwell to let Maddin do the driving and Mr. Mitchell replied "No, I could not do that because he is connected with the Ford Motor Company and I was too, in the same family, and I don't want any hard feelings at all, to tell the truth about it."

It is true that Mr. Mitchell testified also that "Mr. Maddin had authority to drive the car and it was part of his duty with the Cruger Company to drive it" but this is not incon-

sistent with the finding that Maddin did not have an equal right with Atwell to control when the latter was present.

■ Judge Critz in El Paso Electric Co. v. Leeper, 60 S. W. (2d) 187, announces the rule touching the question of joint enterprise applicable to occupants of a conveyance, as requiring not only joint possession by the joint adventurers but they must also have joint control and responsibility for its operation.

They must have an equal right to direct and control the operation of the vehicle. 45 C. J., p. 1031, sec. 588.

We think the evidence, taken all in all, was sufficient to support the jury's finding that Maddin did not have an equal right with Atwell to control the driving and operation of the car at the time of the collision.

This disposes of the contention that Atwell and Maddin were engaged in a joint enterprise on the occasion in question.

■ It is insisted that Maddin had equal opportunity with the driver Atwell to observe and appreciate the speed and hazards of the highway and is charged with knowledge thereof with equal force and in the same manner as was Atwell; that therefore Maddin was guilty of contributory negligence as a matter of law in failing to protest, remonstrate with or caution the driver and in permitting himself to be driven under such conditions.

Atwell was in control of the car, and Maddin was a passenger, the rule of duty devolving upon whom is akin to that of a guest. As said in Davis v. Petty, 258 S. W. 1047 (Com. App.), "it can not be said as a matter of law that the average guest may not place some reliance upon the diligence of his driver. He would surely not in all cases be negligent because the driver was negligent nor free from negligence because the driver was diligent (Galveston, H. & S. A. v. Kutac, 72 Texas, 651, 11 S. W., 127; Lyon v. Phillips, 196 S. W., 995)." It was also said in that case that contributory negligence is and should be, treated as a question of fact, citing Trochta v. Missouri, K. & T. Ry. Co., 218 S. W., 1038 (Com. App.); Texas & N. O. Ry. v. Harrington, 235 S. W., 188 (Com. App.); and Lancaster v. Browder, 256 S. W., 905 (Com. App.).

The evidence, the findings of fact by the jury and the findings of fact by the Court of Civil Appeals establish that Atwell was an experienced driver of a Lincoln car; he was driving down a paved road twenty-five feet in width, of which fifteen feet was hard surface and ten feet gravel; there was sufficient space for him to have driven down the highway and

avoided the collision; the trucks did not obstruct the passage of automobiles traveling on the highway; the parking of the trucks in the manner in which they were parked did not create a dangerous situation on the highway, and that Atwell failed to keep a proper lookout, which resulted in his turning his car to the right and the collision with the parked truck; that Maddin did not fail to keep a proper lookout.

There was no dangerous situation created by the parking of the trucks in the manner they were parked—this was the jury's finding; if Atwell had kept a proper lookout he would have safely driven down the highway exactly as other vehicles had been driven preceding the collision and while the trucks were parked just as they were when Atwell approached. Maddin could have presumed that Atwell would take the safe way of passing down the highway as other drivers had done. While speed was found by the jury one of the proximate causes, another finding attributed the failure of Atwell to keep a proper lookout down the road and to see the trucks as another proximate cause of Maddin's death; if Atwell had been keeping a proper lookout, he could and would have passed safely by the trucks at the speed he was traveling.

Plaintiff in error in its application for writ of error under the proposition that Maddin was guilty of contributory negligence as a matter of law states the rule to be well established that a guest can not recover from the driver where from his knowledge of the automobile, the road and surrounding conditions and position in the car, the facts and circumstances that convicted the driver of negligence would with equal force and in the same manner control the conduct of the guest, and where the guest sits by without protest or remonstrance he thereby acquiesces in the conduct of the driver and assumes the risk resulting therefrom; that in those cases where the question of the contributory negligence of the guest was held to be a question of fact for the jury, one of the differentiating facts is:—

"Where the obstacle which is collided with is observed both by the driver and the guest, although the driver is going at an excessive rate of speed, it may be reasonably concluded by the guest that if the driver continues in his course without deflection, the obstacle will be avoided. An example of this situation is in those instances where there is a vehicle some distance in front of the car in which the driver and the guest are riding which is crossing the highway which both the driver and the guest observe and there is ample space on the highway for the driver to pass behind the car but suddenly and negli-

gently the driver turns in front of the vehicle so crossing his path. In such case the condition which was presented to the guest and the driver had no element of danger and it was the new act of the driver which created the dangerous situation from which the guest was absolved from culpability."

Though Maddin may not in the strict sense of the term have been a guest, he was so situated at the time of the collision. Under the findings, the continuance down the course by Atwell would have avoided the collision. As an ordinarily prudent person, Maddin, who was keeping a lookout, had the right to assume that Atwell was likewise keeping a lookout and though traveling at a rate of speed in excess of the then legal limit, Maddin could have reasonably concluded that Atwell would have continued on his course without deflection and if he had done so he would have avoided the truck collided with. Ford v. Manry, 251 Mich., 461, 232 N. W., 393, 70 A. L. R., 1315.

■ If, as insisted by plaintiff in error, Maddin subjected himself to a known danger and assumed the risk by voluntarily entering the automobile and riding therein at a rate of speed sufficient to render the driver guilty of negligence and with lights claimed to be defective, this became a question of contributory negligence, no relationship of master and servant existing, neither any contractual relation. Buick Automobile Co. v. Weaver, 163 S. W., 594; Galveston, H. & S. A. Ry. v. Patillo, 101 S. W., 492; Texas Midland Ry. v. Monroe, 155 S. W., 973. The jury solved this question by finding that Maddin was not contributorily negligent.

■ We agree with the Court of Civil Appeals that the evidence was sufficient to support the jury's findings that the trucks were not parked in such a way as to in any way obstruct the free passage of traffic on the highway and that Maddin was not in any way guilty of contributory negligence either by commission or omission in riding with Atwell at the time and under all the conditions and circumstances existing. 5 Tex. Jur., 785 and 790; 42 C. J., 1169-1173; Blashfield's Encyclopedia of Automobile Law, vol. 2, 1109, 1110; D. & H. Truck Line v. Hopson (Tex. Civ. App.), 4 S. W. (2d) 1013; Yturria v. Everton (Tex. Civ. App.), 4 S. W. (2d) 211; City of Uvalde v. Stovall (Tex. Civ. App.), 279 S. W., 889; Routledge v. Rambler Automobile Co. (Tex. Civ. App.), 95 S. W. 749; Bower Auto Rent Co. v. Young (Tex. Civ. App.), 274 S. W. 295; Lancaster v. Browder (Tex. Com. App.), 256 S. W., 905.

Plaintiff in error cites Murphy v. Milheiser, 30 S. W. (2d) 586 and Tex-Mex Ry. Co. v. Hoy, 24 S. W. (2d) 18, as in conflict with the holdings in this case.

In Murphy v. Milheiser, the jury found under the circumstances of that case, that failure to protest the excessive rate of speed—from 70 to 80 miles an hour—was negligence, here, under the circumstances of this case,- the jury found that Maddin's failure to request Atwell to decrease the speed at which the car was driven—from 40 to 50 miles an hour—"did not constitute negligence. It is true that in Murphy v. Milheiser, the jury found such negligence in failing to protest was not the proximate cause but the Court of Civil Appeals held that the undisputed proof showed that the inordinate and dangerous speed of the driver constituted the proximate cause of the catastrophe, which became the deceased's own through his failure to protest against it during its unbroken continuance for more than 20 miles. It was there contended that although the jury's verdict found both parties to have been guilty of negligence, it was the jury's further province to determine which negligence proximately caused Murphy's death, but the court said that the three occupants were on a pleasure ride from Galveston to Houston, were close friends from boyhood, worked for the same organization, and the dangerous speed constituted the proximate cause and the driver's negligence became that of Murphy's because of his failure to protest. The three occupants of the car, Milheiser, Murphy and Weisen (the other two being Milheiser's guests) were of one accord with reference to speed. Thus, that case is differentiated from this.

In Tex-Mex Ry. Co. v. Hoy, injuries were sustained by Willie Hoy, a minor, because of the collision of an automobile in which he was riding, with a tank car standing at a point where the railroad company's track crossed one of the principal thoroughfare in the City of Laredo. The street was in total darkness and a heavy driving rain was falling. The driver testified it was raining so hard he could not see a tank car in front of the automobile headlight.

The undisputed facts are that Hoy had covered his head and shoulders with an article of clothing, was familiar with the railroad crossing where the collision occurred, and knew that trains or cars might be using or occupying the same at any time, day or night. He testified that he trusted to the driver to drive as he pleased when he knew or in the exercise of reasonable care should have known the driving rain obstructed his vision and an object could not be seen at any appreciable dis-

taince. The crossing was a known place of danger and the court said "the occupant of a vehicle should not be permitted to abandon the exercise of his own faculties and entrust his safety absolutely to the driver when he knows the vehicle is being driven in a careless and reckless manner into a known place of danger."

Clearly different from the case at bar where there was no known or apparent danger until Atwell swerved the car.

The trial court instructed the jury:—

"Proximate cause," as that term is used herein, means that cause, which in a natural and continuing sequence, unbroken by any new and independent cause produces an injury, and without which the injury would not have occurred, and from which it ought reasonably to have been foreseen, or reasonably anticipated by a reasonably prudent person that the injury complained of, or some similar injury, would result naturally and probably in the light of the attending circumstances.

"New and independent cause," as used herein, means a new and independent force, which breaks the casual connection between the original wrong, if any, and the injury.

An objection filed by the defendant (No. 3) in the trial court was that there is no proper legal guide for the jury on a proper legal definition of proximate cause in that the legal essentials of a proper definition of proximate cause are omitted by the failure of the court to contain in his definition of proximate cause the essential of "new and independent cause," which is one of the proper essentials of a correct legal definition of proximate cause.

The motion for new trial on this point is as follows: "The court erred in its charge to the jury in its definition of 'proximate cause' for the reason that the definition of proximate cause does not contain the essentials of 'new and independent cause' as excepted thereto by the defendant in numbered paragraph 3 of its exceptions and objections to the court's charge."

In the Court of Civil Appeals, for the first time, the Ford Motor Company calls attention to what it deems defects in the definition of "intervening agency" and of "new *intervening* cause," in that definition did not embrace a lack of control and lack of foreseeability. The court's charge did not use in its definitions the words "intervening agency" or "new *intervening* cause," and the Court of Civil Appeals concluded, correctly we think, that if the appellant company, by such proposition attempted to complain of the definition of "new and *independent*

cause," as given by the trial court, its objections thereto as made in the trial court were too vague and indefinite to put the trial court upon notice of the particular defects so pointed out and would not authorize or justify a reversal of the judgment for said alleged defects.

■ The inquiry therefore follows, in the present case, whether the objection to the charge sufficiently specified the error sought to be complained of.

To come within the rule entitling a party to raise the point on appeal the objection should point out specifically wherein the charge is claimed to be erroneous.

Here the objection is that the charge contains no proper legal definition of "proximate cause" in that it does not contain a definition of "new intervening cause" and "intervening agency"—if meant to complain of the definition of "new and independent cause," the court did undertake to define "proximate cause" and also "new and independent cause"; the objection nowhere specifically points out in what particulars the definition of "new and independent cause" is defective. The objection is too general.

In Isbell v. Lennox, 116 Texas, 523, 295 S. W., 920, the court said the purpose of the statute is to require parties to present their objections to the charge clearly and apprise the court of the error in his charge with a view to its correction; the objection must be more than a mere statement that he objects— it must point out the error complained of. See also Walker v. Haley, 110 Texas, 50.

■ An objection that a definition is "not full enough and omits some of the esssentials of a correct definition," is too general; similarly an objection that charges are leading, suggestive and on the weight of evidence is insufficient when it does not point out the particulars in which they are objectionable, nor can an objection that merely excepts to a portion of the charge without indicating in any way the vice thereof, be availed of. 3 Tex. Jur., p. 212. See also Fisheries Co. v. McCoy, 202 S. W. 343; Texas & P. Ry. Co. v. Prunty, 233 S. W. 625; Chisos Mining Co. v. Llanez, 298 S. W., 642; McCraw v. Galveston, H. & S. A. Ry. Co., 182 S. W. 417. The objection must be presented to the court before the charge is read to the jury so as to afford opportunity for correction in the particulars urged; an objection made for the first time in a motion for new trial comes too late, nor may a party urge in the appellate court an objection not made in the trial court. 3 Tex. Jur., p. 202, Par. 137.

Plaintiff in error cites as authority for its contention that the objection was sufficient to call the Court's attention to the alleged defect and it was not bound to request what it conceived to be a correct charge, viz: Dallas Ry. Co. v. Alexander, 23 S. W. (2d) 512; Robertson & Mueller v. Holden, 1 S. W. (2d) 570; Blanch v. Villiva, 22 S. W. (2d) 490; Rio Bravo Oil Co. v. Matthews, 20 S. W. (2d) 342.

These cases are easily distinguishable from that at bar.

In Dallas Ry. Co. v. Alexander, the court on rehearing, concluded that the evidence did raise the issue of unavoidable accident and therefore the appellant having requested a special charge on the subject properly laying the burden of proof, (in the place of the charge submitted by the court which it was contended wrongly placed such burden), which should have been given, the objection was sufficiently indicated in the form of the special issue requested and refused.

Here, there was no request for submission of a special issue covering the point and as we have demonstrated, no objection sufficient to acquaint the court with the specific ground of complaint.

In Robertson & Mueller v. Holden, the objection was that no explanation or definition of the term "new independent cause" was given,—the trial court refused or at least did not define the term; here the court did give a definition of that term. An objection to the failure of the court to give a definition is sufficient but the objection to the definition as actually given must point out the specific error thereof.

In Blanch v. Villiva, the court defined proximate cause as "an efficient cause without which the injury would not have happened and from which danger of injury might reasonably. have been anticipated as a natural and probable sequence." The objection, among others, was failure of the court to define "efficient cause" and *the trial court's refusal* to define that term was held error.

In Rio Bravo Oil Company v. Matthews, the court refused to define the term "efficient intervening cause" used in its definition of "proximate cause"; such refusal constituted reversible error, appellant having duly excepted to such refusal.

Clearly those cases are not in point; the court here did not refuse to define the terms in question but did attempt to do so. Speer's Special Issues, p. 385.

■ No complaint of excessiveness of verdict is raised, indeed that is not a question within the jurisdiction of the Supreme

Court.  Beaumont S. L. & W. Ry. Co. v. Schmidt, 123 Texas; 580, 72 S. W. (2d) 899.

The judgments of the trial court and of the Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court November 28, 1934.