**EL PASO CITY LINES, Inc., a corporation, Appellant,**

v.

**Blas SANCHEZ et al., Appellees.**

No. 5243.

Court of Civil Appeals of Texas.

El Paso.

Oct. 16, 1957.

Rehearing Denied Nov. 6, 1957.

Kemp, Smith, Brown, Goggin & White, El Paso, for appellant.

Hardie, Grambling, Sims & Feuille, Leo Jaffe, El Paso, for appellees.

WILLIAMS, Justice.

Appellant, City Lines, states the nature of this case as follows:

"Appellee Blas Sanchez, as Plaintiff, sued Appellant El Paso City Lines and Appellee Tony DeLora, as Defendants, for damages resulting from an automobile accident. DeLora sued City Lines for damages in cross-action, and City Lines prayed judgment over against DeLora for indemnity or contribution. Trial to a jury resulted in findings of fact that failure to keep a proper lookout by City Lines' driver was a proximate cause of the accident, that DeLora's failure to stop for a red light, and keep a proper lookout were proximate causes of the accident, that Sanchez's failure to keep a proper lookout and failure to warn DeLora of the red light were proximate causes of the accident, that Sanchez was a guest in DeLora's automobile, and that Sanchez's damages amounted to $7,500.00.

"City Lines moved for judgment on the verdict, and Sanchez moved for judgment non obstante verdicto. The trial court granted Sanchez's motion and entered judgment that Sanchez recover his damages from City Lines and take nothing from DeLora, that DeLora take nothing from City Lines, and that City Lines be denied judgment over against DeLora. After its amended motion for new trial was overruled, City Lines perfected this appeal."

The collision in question took place on October 27, 1954, at the intersection of Cotton and Texas Streets, El Paso, at about one o'clock in the morning. Sanchez was in the insurance business in Santa Fe, New Mexico, and he and his wife on that date came to El Paso and stopped at the Del Camino Courts. DeLora was a friend of theirs, and was interested in moving to Santa Fe and writing insurance for Sanchez, so he came to the Courts and met with Sanchez and his wife. They talked over their business and visited other friends in El Paso, and returned to the Courts about 1:00 A.M. They decided to go down into the City of El Paso to get some hot

food, as they had not eaten since noon that day. They decided to ride in DeLora's car, so they could continue to visit and talk about their business. As they proceeded west on Texas Street, they stopped once at a small cafe, but it had no hot food, so they proceeded on toward town, and when they got to the intersection of that street with Cotton Avenue, they collided with a City Lines bus. Disinterested witnesses said that DeLora entered the intersection on a red light, and the jury so found; De-Lora testified that he saw the light when he was some fifteen feet from the intersection, and that it was green. Sanchez testified that he saw the light just before entering the intersection when he was probably five feet back, and that it was green. Sanchez also testified, without dispute, that DeLora had been driving prudently all night, and that he thought there was nothing wrong with the manner of his driving at any time, even immediately before the accident. He said that he was sitting facing DeLora just before the accident, and that DeLora was looking straight ahead; that just after entering the intersection he saw the bus immediately in front of them and called out, "Tony, the bus." He said the collision then occurred immediately. In answer to Issues 24 and 25, the jury found that Sanchez failed to keep a proper lookout for his own safety, and that such was a proximate cause. In answer to Issues 29, 30 and 31, it found that Sanchez *had an opportunity* to see the red light in time to warn; that he failed to warn, and that such failure was a proximate cause. In granting judgment n. o. v. for plaintiff Sanchez, the Court said:

"And the Court finds that the jury's answers to Special Issues Nos. 24, 25, 29, 30 and 31 should be set aside and disregarded, for the reason that the evidence was insufficient to warrant the submission of the above issues and there is no evidence to support the answers thereto, and there is no evidence which gives rise to a duty owed by Plaintiff in connection with the issues relating to the contributory negence of Plaintiff."

Appellant and appellee do not seem to differ greatly concerning the law controlling in this part of the case. Appellant relies largely on Texas-Mexican Ry. Co. v. Hoy, Tex.Com.App.1930, 24 S.W.2d 18, reversing, Tex.Civ.App., 13 S.W.2d 948. Certainly this case holds that, under certain circumstances, a passenger in a car can be guilty of negligence in not caring for his own safety, but it also is definite authority for appellee's position that no duty exists for him to keep a lookout except under "exceptional circumstances". Appellant correctly states the controlling issue in the following manner:

"Thus, the question here is whether the evidence, viewed as it must be after the Trial Court has granted a judgment non obstante veredicto, raised a duty on Sanchez's part to lookout and warn and whether the evidence supported the jury's answers in that regard."

Appellant then cites Garcia v. Moncada, Tex.Com.App.1936, 127 Tex. 453, 94 S.W. 2d 123, 124, reversing, Tex.Civ.App., 62 S.W.2d 215, as authority for the proposition that a passenger, under certain circumstances, owes a duty to keep a lookout; but that case also says:

"It is elementary that, absent a duty to perform an act, one cannot be negligent in failing to perform it. If, as a matter of law, no duty is owing, then no issue of fact as to negligence is presented."

In his brief appellant says:

"Under the facts of this case, City Lines urges that the jury was entitled to believe that Sanchez saw the red light, that he failed to keep a lookout for other vehicles at the intersection, and that he failed to give any warning to his driver, even though the car was proceeding at undiminished speed against the red light."

We do not agree with this statement for several reasons. As stated above, the undisputed evidence was that DeLora had been driving prudently all evening. The evidence shows that DeLora approached the intersection without diminishing his speed for some 200 or 300 feet. There is absolutely no evidence concerning the speed of the car until it got within two or three hundred feet of the intersection. Witnesses then estimated it at from 30 to 50 miles per hour. Therefore, there was certainly, under the undisputed evidence, no duty on Sanchez to keep a lookout until he got very near the intersection. The fact that a witness estimated his speed in this two or three hundred foot space as high as 50 miles an hour does not, in our opinion, raise the duty on Sanchez to warn the driver of his speed, the undisputed evidence showing that the driver was familiar with the streets of El Paso and this particular intersection, while Sanchez was not. Sanchez testified, without dispute, that he did not see the light until he was approximately five feet from the intersection. Almost instantly thereafter he saw the bus in front of them and cried out his warning, but it was too late. There is absolutely no evidence that the speed of his car, whether it be 30, 40 or 50 miles an hour at that particular time, was so excessive as to be dangerous, and it seems that speed, alone, especially when it is not particularly excessive, does not create a duty to warn. Schumacher Co. v. Shooter, Tex.Com.App.1939, 132 Tex. 560, 124 S.W.2d 857, 858, is factually very similar to the instant case and is considered controlling. In it the plaintiff was a passenger in a car being driven by her daughter. The court says:

"We agree with the Court of Civil Appeals in its holding that the trial court did not err in refusing to submit to the jury the requested issue inquiring whether Mrs. Shooter, who was a passenger in the car, failed to keep a reasonable lookout for 'automobiles and trucks on the highway ahead of her just prior to and at the time of the collision.' (94 S.W.2d [484] 486.) In addition to the cases quoted and cited by that court, see Horton & Horton v. House, Tex.Com.App., 29 S.W.2d 984; Garcia v. Moncada, 127 Tex. 453, 94 S.W.2d 123; Moncada v. Garcia, Tex. Civ.App., 62 S.W.2d 215; 6 T.L.R. p. 111; West v. Bruns, Tex.Civ.App., 294 S.W. 235. It is true that a passenger owes the duty to warn the driver of danger under certain circumstances, but the facts of this case fail to disclose such duty. There is nothing in the testimony indicating a failure on plaintiff's part to exercise reasonable care for her safety unless the mere fact that there was some testimony that Anabel was driving at about 50 or 60 miles an hour just prior to the collision or was on the wrong side of the road, is sufficient to do so. The type of testimony referred to, as well as that concerning the positions of the car and truck and markings on the ground after the collision, while raising the issue of negligence vel non of the driver, does not, without more, raise an issue of a want of reasonable care on the part of plaintiff, a mere passenger. The occurrence of a collision is not of itself evidence of negligence on the part of plaintiff. Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195."

"So far as appears from the testimony in the present case Mrs. Shooter had no occasion to direct the manner of the driver's operation of the car. The driver was an experienced one and there is no evidence of any unusual hazard attendant upon the occasion prior to the accident or that anything had occurred which indicated plaintiff at the time in question was negligent in the matter of maintaining a lookout for 'automobiles and trucks on the highway ahead * * *.' The reasons stated uphold also the action of the trial court in refusing to submit the requested issue inquiring whether

plaintiff was negligent in failing to make complaint to the driver of the speed at which she was operating the car. The Court of Civil Appeals correctly held that the trial court did not err in refusing to submit either requested issue."

This case also distinguishes the Hoy case and several others relied on by appellant. See also Davis v. Shafer, Tex.Civ.App. Eastland 1949, 222 S.W.2d 145 (ref. n. r. e.), and Harper v. Texas & P. Ry. Co., Tex.Civ.App. Eastland 1940, 146 S.W.2d 426.

In the instant case, the speed for some two or three hundred feet would be "no more than a 'momentary thoughtlessness, inadvertence, or error of judgment'" (Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001, 1004), and the cases uniformly hold that the passenger should not warn under such circumstances. The cases characterize this type of warning as "back-seat driving" and severely condemn it. See opinion of Court of Civil Appeals in the Schumacher case, 94 S.W.2d 484; also, City of Uvalde v. Stovall, Tex.Civ.App., 279 S.W. 889 (ref.). Murphy v. Milheiser, Tex.Civ.App. Galveston 1930, 30 S.W.2d 586, relied on strongly by appellant, is not in conflict, as it is based on very excessive speed for many miles, etc. See Schumacher, supra, and Ford Motor Co. v. Maddin, Tex.Com.App. 1934, 124 Tex. 131, 76 S.W.2d 474, for distinguishing features. Gulf, C. & S. F. Ry. Co. v. Jones, Tex.Civ.App. Eastland 1949, 221 S.W.2d 1010, 1013, (ref. n. r. e.), thoroughly discusses the degree of care exacted of a passenger and reviews many of the authorities. Much of its language could appropriately be quoted and adopted here. Space permits only part:

"We find no evidence in the record showing the existence of exceptional circumstances which would impose upon Mr. Jones the duty to keep a lookout or which should have caused him to know or believe that he ought not to trust the vigilance of the driver. There was no evidence of any improper driving, carelessness or other misconduct on the part of the taxi cab driver. It is true that the jury found that the crossing involved was extra hazardous and dangerous and that Jones knew the crossing and the situation existing and had known the same for many years, but it is conclusively established that the driver of the taxi cab had lived in Sweetwater for a number of years and had been driving a cab for this same company for more than three years; that he had never prior thereto, while driving a taxi cab, been involved in an accident. In fact, it is conclusively established that he knew as much or more about the crossing as Jones knew.

"There is nothing in the record to indicate that Mr. Jones was under any duty to direct the taxi cab or its driver on the occasion in question. Furthermore, there is no showing that Mr. Jones knew the taxi cab driver did not see the train and perceive the danger or that he knew the driver was unskilled or in any way negligent. To the contrary, the evidence shows that the taxi cab driver was a skillful driver and that he and Jones saw the oncoming train at about the same time."

In the instant case, DeLora was familiar with the street he was driving on, and Sanchez was not. They saw the light about the same time. Therefore, there was no duty on Sanchez's part to instruct him as to how to drive, or to warn him. When Sanchez first saw the light, his undisputed testimony is that he was only five feet from the intersection, and there is not a scintilla of evidence in the record even suggesting that his testimony in this regard is not true. Therefore, we cannot accept appellant's contention that the jury may have justifiably thought that he sat there and "permitted himself to be driven to his injury." Such a conclusion would be without support in the evidence, and would be the rankest of speculation. When he saw the

light, he was in an emergency, and there was no duty on him to warn of the red light, even if we can assume that he knew it was red, as contended by appellant, although he testified that he thought it was green.

■ For all these reasons, we think that there was no duty on the part of Sanchez to keep any lookout other than that which he kept. The jury found that DeLora was not driving in excess of 30 miles an hour, nor imprudently; but viewing the speed even as testified to, it still did not raise any extra duty on the part of Sanchez; and viewing the light situation "through his eyes", one was not then raised. In Dallas Railway & Terminal Co. v. Bailey, 1952, 151 Tex. 359, 250 S.W.2d 379, 381, it is said:

> "The fact that the driver of the automobile may have been guilty of negligence as a matter of law in driving at such a rate of speed as that he could not stop within the range of his vision does not convict the plaintiff of the same negligence. Whether the plaintiff was guilty of negligence must be determined by viewing the situation through her eyes."

See Edmiston v. Texas & N. O. R. Co., Tex.Com.App.1940, 135 Tex. 67, 138 S.W. 2d 526, 530, and Larson v. Missouri-Kansas-Texas R. Co., Tex.Civ.App. Austin 1952, 254 S.W.2d 215, (ref. n. r. e). We also find that after he discovered the danger, he did all that could have been expected of him for his own safety.

■ We therefore hold that there was no justification for the submission of the above issues, and that the eminent trial judge was correct in disregarding them. We also agree with the reasons expressed by him for his action.

■ This brings us to the only remaining question of this case, which is: Did the trial court err in declining to allow the City

Lines contribution against DeLora. The City Lines admits that it is not entitled to contribution if Sanchez was a "guest" in DeLora's car, rather than a "passenger", relying on the authority of Mitchell v. Gooch, Tex.Civ.App. Eastland 1948, 210 S. W.2d 834 (no writ history). No effort was made in the trial court to establish gross negligence. The jury found, in answer to Special Issue No. 11 that Sanchez was not a "passenger"; and in answer to Special Issue No. 12 it found that he was a "guest".

Therefore, our only task is to determine if there was evidence of probative force sufficient to sustain the jury's findings.

■ Some of the evidence concerning this point has been given above. All of the evidence on the subject came from Sanchez and DeLora. Each testified that when they got back to Del Camino Courts, about one o'clock in the morning, they all decided to go to town to get something to eat. A discussion arose as to whether to go in one car, or each drive his own car. DeLora testified, in part:

> "I invited Mr. Sanchez to come to town and have something to eat, and Mr. Sanchez suggested that he go in his car and I go in my car."

DeLora also testified:

> "Well, why don't we just get in my car and I will bring you back. It won't be any trouble to bring you back, and we can discuss our business on the way down."

This invitation, or suggestion, of DeLora's was accepted, and they all got in his car, and started toward downtown El Paso to get some hot food, as they had not eaten since noon that day. As has been shown, DeLora was familiar with the streets of El Paso and Sanchez was not. They were good friends, and it was perfectly natural for all to ride in one car under the circumstances. True it is that they had not completed their

discussion about whether or not DeLora would go to work for Sanchez, and that each wanted to discuss that subject further. City Lines insists that this situation placed Sanchez in the status of "passenger" rather than "guest", as that term is used in Sec. 1 of Art. 6701b of the Revised Civil Statutes of Texas. City Lines even contends that DeLora's testimony above, including "and we can discuss our business on the way down", is a judicial admission that Sanchez was a "passenger" and not a "guest". For this contention, it relies largely on Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767, 145 S.W.2d 569, 570. We do not think this testimony rises to the dignity of a judicial admission, because it does not, if true, "defeat his right to recover", which is one of the tests laid down in the above-cited authority.

It is plain to us that the main purpose of the trip to town was to get food. If the purpose had been to further discuss their business, this discussion could have been had at the tourist court even better than while riding to town. We therefore hold that the main purpose of the trip was to get food; that Sanchez rode with DeLora at his invitation and shared no part of the expense; that the discussion of their business while riding toward town was merely incidental to the trip. We consider Burt v. Lochausen, Tev.Civ.App., 244 S.W.2d 915; Id., 1952, 151 Tex. 289, 249 S.W.2d 194, 198, controlling here, although the business discussion had not been concluded as thoroughly in this case as it had in the Lochausen case. We say here, as we did in the Lochausen case, and as the Supreme Court did in that case:

"The benefits suggested by the plaintiff are thought to be too uncertain, remote, and speculative to be definite and tangible."

Wherefore, all points of error are overruled, and the judgment of the trial court is, in all things, affirmed.