## EDMISTON v. TEXAS & N. O. R. CO.
### No. 8492.

Court of Civil Appeals of Texas. Austin.
Oct. 20, 1937.

Rehearing Denied Jan. 5, 1938.

Polk Shelton & Emmett Shelton and Everett L. Looney, all of Austin, for appellant.

Baker, Botts, Andrews & Wharton, of Houston, and Smith, Goldsmith & Bagby, of Austin, for appellee.

BLAIR, Justice.

Appellant, A. J. Edmiston, sued appellee, Texas & New Orleans Railroad Company, for damages for injuries sustained

by his wife, Lola Edmiston, in a collision between an automobile, in which she was riding as a guest of Cecil Ramos, and a switch engine operated by the employees of appellee. The accident occurred about 6:45 p. m., just after dark, and where appellee's Llano branch line crosses East Sixth street, in the city of Austin. Appellant pleaded discovered peril and other acts of negligence on the part of the operatives of the switch engine as grounds for a recovery. As defense appellee pleaded certain acts of Cecil Ramos as contributory negligence on his part, which contributory negligence was alleged to be imputable to Lola Edmiston, and alleged certain acts of Lola Edmiston as contributory negligence on her part.

The case was submitted to the jury upon 97 special issues. The jury found the issues submitting discovered peril in favor of appellee railroad. It found that the operatives of the engine were negligent in several particulars alleged, and that each such act of negligence was a proximate cause of the collision and of the injuries to Lola Edmiston. The jury also found that Cecil Ramos, the driver of the automobile, was negligent in several particulars, and that each such negligent act was a proximate cause of the collision; but that neither of such negligent acts of Cecil Ramos was the sole proximate cause of the collision. With respect to the alleged acts of contributory negligence of Lola Edmiston, the jury found that the whistle of the switch engine was blown before it reached the crossing in question; that Lola Edmiston could have in the exercise of ordinary care heard the whistle in time to have warned the driver of the automobile of the engine's approach, and in time for him to have stopped the automobile before it reached the crossing, but that her failure to do so was not negligence; that the headlights on the rear end of the switch engine in question were burning as it approached the point of collision; that Lola Edmiston by the exercise of ordinary care could have seen the burning headlights as the automobile approached the crossing in time to have warned the driver to stop the automobile before it reached the crossing, but that the failure of Lola Edmiston to see the headlights and warn the driver was not negligence on her part; that Lola Edmiston in the exercise of ordinary care could have seen the defendant's switch engine as it approached the crossing in question in time to have warned the driver of the car of that fact, but that her failure to see the engine and to call the attention of the driver of the automobile to the approaching engine was not negligence on her part; that the automobile was being operated at an unlawful rate of speed at the time it approached the crossing; that Lola Edmiston failed to protest to the driver of the automobile of such speed, but that such failure to protest was not negligence; that Lola Edmiston failed to listen, watch, and look out for trains and engines that might be approaching the crossing as the automobile in which she was riding also approached the crossing, but that her failure to listen, watch, and look out for trains and engines was not negligence; and that it was not negligence for her not to have protested to the driver of the automobile to bring the same to a stop immediately prior to the collision.

Appellant filed a motion for rendition of judgment upon the answers of the jury to the special issues submitted, contending that the answers exonerated Lola Edmiston of contributory negligence and convicted appellee railroad of negligence proximately causing the collision and the consequent injury to Lola Edmiston. Appellee did not file a motion for judgment, either upon the answers of the jury or non obstante veredicto; but the trial court overruled appellant's motion for judgment and rendered judgment for appellee, upon the finding and conclusion "that the defendant is entitled to judgment upon the verdict of the jury."

 The pleadings and evidence having shown Lola Edmiston guilty of contributory negligence as a matter of law, no issue other than that of discovered peril should have been submitted to the jury, and in consequence, the jury having determined the issue of discovered peril in favor of appellee, the question of whether the trial court could have rendered judgment non obstante veredicto without a written motion of appellee, and notice and hearing thereon, as required by article 2211, as amended in 1931, Vernon's Ann.Civ.St. art. 2211, is not material. The rule is settled, "that where, under no view of the pleadings and evidence, the plaintiff is entitled to recover, the submission of the issues and the findings of the jury are immaterial, and may be disregarded by the court." Vogel v. Allen, 118 Tex. 196, 13 S.W.2d 340, 341; Frank L. Smith Tire Store v. Firestone Tire & Rubber Co., Tex.Civ.App., 68 S.W.

2d 577; Amarillo Transfer & Storage Co. v. De Shong, Tex.Civ.App., 82 S.W.2d 381; Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332; Hines v. Parks, Tex.Com.App., 96 S.W.2d 970. And since the jury eliminated "the issue of discovered peril as a distinct ground of recovery, contributory negligence on the part of the plaintiff [Lola Edmiston, wife of plaintiff] in ·the suit, which proximately caused or contributed to cause [her] injuries, would be a complete defense, notwithstanding the primary negligence of [appellant's] servants in operating the train." Missouri-K.-T. Ry. Co. v. Cheek, Tex.Civ.App., 18 S.W.2d 804, 806, writ of error dismissed.

We find from the undisputed evidence that Lola Edmiston was guilty of contributory negligence in the following particulars plead by appellee:

1. In failing to listen, watch, and look out for appellee's switch engine as the automobile in which she was riding on the front seat with the driver approached the railroad crossing, which she could have seen by the exercise of ordinary care in time to have called attention of the driver of the automobile to the approaching engine.

2. In failing to call attention of the driver of the automobile to the approaching switch engine, which she could by the exercise of ordinary care have seen as it approached the point of collision, in time for the driver to have stopped the automobile and avoided the collision with the switch engine.

3. In failing to exercise ordinary care to listen, watch, and look out for the defendant's switch engine, which by the exercise of ordinary care she could have seen the burning headlight on the rear of such engine as it backed toward the street and the automobile in which she was riding approached the railroad crossing.

The evidence showed that Lola Edmiston was employed on the day of the accident as a waitress in the Govalle Beer Garden. Cecil Ramos, a Mexican, had spent most of the afternoon at this beer garden. She testified that she and Ramos each drank two bottles of beer about 4 o'clock in the afternoon before the accident, at about 6:45. Lola Edmiston lived in a room adjoining the beer garden. She contemplated changing employment, and asked Cecil Ramos for a ride into the city of Austin. They started in Cecil Ramos's automobile and proceeded to East Sixth street. When the automobile turned into East Sixth street, which runs east and west, it was at a point about 810 feet from the place where the collision occurred. East Sixth street is level and straight, paved, and a main thoroughfare leading to all points east of Austin. At the point where the automobile entered East Sixth street and just south of the street were some buildings and oil tanks which may have for a very short distance obstructed the view of the approaching engine, which was necessarily slightly to the left of the front or straight-ahead view of the occupants of the automobile as they came into the street. There was a railroad crossing with a statutory crossbar warning sign a short distance from where the automobile first entered East sixth street. The automobile passed over this crossing and proceeded several hundred feet to the crossing where the accident occurred, and where another statutory crossbar warning sign stood, and where a street light was burning. The railroad tracks did not cross East Sixth street at right angle, but in a northerly-southerly direction. The switch engine had left the main line near Canadian street and was approaching East Sixth street from a southerly direction, with the headlight on the rear of the engine, the engine backing at the time, shining slightly to the right of the crossing and more in the direction of the automobile in which Lola Edmiston was riding than it would have if the railroad track had crossed the street at right angle, thus giving her a better opportunity to observe the headlight of the approaching engine. There was no obstruction of any sort to prevent Lola Edmiston from seeing the engine, or from seeing the light on the rear of the engine at it came across from Canadian street and approached East Sixth street. For at least 800 or more feet the view of the approaching engine was plain and unobstructed. Disinterested witnesses fixed the speed of the automobile at from 30 to 35 miles per hour, and the speed of the engine at more than 6 and less than 12 miles per hour. As to how the accident occurred Lola Edmiston testified as follows: "I know where the Austin-Hempstead line of the T. & N. O., or Southern Pacific, crosses Fifth Street. We picked up Cirildo before we crossed that crossing. After we had crossed that crossing we turned to the left to get on the pavement on Sixth Street. I was then just sitting there looking down the road and Cecil

was driving along and doing the same thing. I have driven cars, and know how to drive a car. I have driven cars for about ten or twelve years and have observed cars in driving down the street and so forth and so on, and am able to give an opinion as to the rate of speed of automobiles in which I am riding. While we were riding on East Sixth Street headed towards town and after we had crossed this first crossing before the collision, it is my opinion that Cecil was driving the Ford car at around twenty-five miles an hour. There was a car that attracted my attention between the time that we crossed the first crossing and before we had the collision later with the switch engine. This car was ahead of us, but I am not sure whether it was driving slow or whether it was parked. We passed that car, and in passing it Cecil just slowed down and turned out around it. As to whether I saw a switch engine before the collision, after we were right on it I did. I had been looking all the time down the road. The switch engine was about the middle of the street when I saw it, and we were just right up on the engine when I first saw it. My estimate of the number of feet the switch engine was from us at the time I first saw it would be about four or five steps, but I can't say for sure about that. When I saw the switch engine I hollered; I said, 'Look out—there is the engine!' and then I slipped down in my seat. Cecil Ramos swerved to the right and threw on the brakes, and that is as far as I know."

The automobile referred to by the witness was occupied by four passengers, each of whom testified that he saw the approaching engine for some distance before it reached the crossing; and that after the Ramos car passed them it picked up speed until the collision occurred. The car referred to was being driven at from 15 to 20 miles per hour.

The Ramos automobile missed the running board on the side of the engine nearest to the automobile, but the radiator of the automobile struck the drawbar on the center of the engine, which crushed the top and body of the automobile, and the automobile struck the running board on the opposite side of the engine from which the automobile approached, shearing the bolts, brackets, and running board from the engine; and the top and body of the automobile were completely demolished. The engine pushed the automobile some 3 or 4 feet after the collision, to where the engine was brought to a standstill. The collision occurred just north of the center of the street and the engine came to a stop within 6 or 8 feet of the north side of the 30-foot paved street. Cecil Ramos was killed instantly, and Lola Edmiston, the wife of appellant, and the other Mexican occupant of the automobile were injured. The other Mexican occupant of the automobile did not see the approaching engine until they were within a few feet of it, when he, like Lola Edmiston, called to the driver that there was the engine.

■ It is the rule in Texas that while the duty of a guest riding in an automobile is not precisely the same as that of the driver of the automobile under all circumstances, still the guest is equally under the duty to look out for his or her own safety as far as possible, and is expected to see obvious danger and to warn the driver of it. That is, because the guest rider has no absolute control over the acts of the driver of any automobile, the negligence of the driver is not in all instances imputable to the guest rider, still, in railroad crossing collisions, the guest rider is required to exercise reasonable care for his or her own safety, and to keep a lookout for an approaching train and to warn the driver of it. In such circumstance it is reasonable to suppose that the driver will heed the warning and do all in his power to avoid the collision. It may therefore be said that in approaching a railroad crossing in an automobile, a guest rider, in not looking out and warning the driver of an approaching train, does not act as an ordinarily prudent person would act under the same or similar circumstances. Anderson v. Texas & N. O. R. Co., Tex.Civ. App., 63 S.W.2d 1079; Texas Interurban Ry. Co. v. Hughes, Tex.Com.App., 53 S.W. 2d 448; Hoy v. Texas Mexican R. Co., Tex.Civ.App., 13 S.W.2d 948; Texas City Terminal Co. v. Showalter, Tex.Civ.App., 257 S.W. 621; Chicago, R. I. & G. R. Co. v. Johnson, Tex.Civ.App., 224 S.W. 277; Chicago, R. I. & G. R. Co. v. Wentzel, Tex.Civ.App., 214 S.W. 710; Thweatt v. Ocean Accident & Guarantee Corporation, Tex.Civ.App., 62 S.W.2d 250; Louisiana R. & Nav. Co. v. Cotton, Tex.Civ.App., 1 S.W.2d 393; Miller v. Union P. R. Co., 290 U.S. 227, 54 S.Ct. 172, 78 L.Ed. 285; McNeel v. Texas & N. O. R. Co., Tex.

Civ.App., 54 S.W.2d 571; Missouri-K.-T. Ry. Co. v. Cheek, Tex.Civ.App., 18 S.W.2d 804; Long v. McCoy, Tex.Civ.App., 294 S.W. 633, 637; Yates v. Grayburg Oil Co., Tex.Civ.App., 38 S.W.2d 414; Battle v. Wolfe, Tex.Civ.App., 283 S.W. 1073; Murphy v. Milheiser, Tex.Civ.App., 30 S.W.2d 586; Bertrand v. Mutual Motor Co., Tex.Civ.App., 38 S.W.2d 417; Texas & N. O. Ry. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741; Texas & N. O. Ry. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 746, 748; Parramore v. Denver & Rio Grande Ry. Co., 8 Cir., 5 F.2d 912; Bostick v. Texas & P. Ry. Co., Tex.Civ.App., 81 S.W. 2d 216, 219; Wichita Valley Ry. Co. v. Fite, Tex.Civ.App., 78 S.W.2d 714, 716; Koock v. Goodnight, Tex.Civ.App., 71 S.W.2d 927; Louisiana Ry. Co. v. Cotton, Tex.Civ.App., 1 S.W.2d 393, 399; 4 Blash-field's Cyclopedia of Automobile Law and Practice, Permanent Ed., p. 277.

■ Under the rule of law stated, the undisputed evidence, and particularly her own testimony, Lola Edmiston was guilty of contributory negligence as a matter of law, in failing to lookout for and discover the approaching engine in time to have warned the driver of the automobile in time for him to have stopped the automobile and avoided the collision. The undisputed evidence showed that the street and crossing were level and smooth; that her view of the street, crossing, and the approaching engine was open and unobstructed for more than 800 feet. There was no physical condition which rendered the street or crossing extra hazardous, or in any manner obstructed her view of the approaching engine. Notwithstanding her unobstructed view, Lola Edmiston testified that she did not see the engine until it was on the street crossing, and "that the engine was about the middle of the street when I first saw it and we were just right up on the engine when I first saw it." She further testified that, "I had been looking all the time down the road"; and that Cecil Ramos had been looking down the road all the time and did not see the engine until she called his attention to it. These undisputed facts bring the instant case clearly within the decisions of the Texas courts which hold that even if the accident or crossing collision occurred at nighttime, the victim or the guest rider is guilty of contributory negligence where he or she admits that they only looked ahead as they approached the crossing. St. Louis Southwestern R. R. Co. v. Branom, Tex.Civ.App., 73 S.W. 1064; Murphy v. Milheiser, Tex.Civ.App., 30. S.W.2d 586; Texas & N. O. Ry. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741; Texas & N. O. Ry. Co. v. Stratton, Tex. Civ.App., 74 S.W.2d 746, 748; Texas Mexican Ry. Co. v. Hoy, Tex.Com.App., 24 S.W.2d 18.

In Sanchez v. San Antonio & A. P. Ry. Co., Tex.Civ.App., 27 S.W. 922, 923, affirmed 88 Tex. 117, 30 S.W. 431, Mr. Justice Williams, speaking for the court, observed that: "It is only when there is evidence. of some circumstances to obstruct his view, or to. mislead him or to excuse him from looking out for approaching trains, that a plaintiff, stepping upon a railroad track in front of a moving car, without looking, has been held by our courts not to have been guilty of contributory negligence." To the same effect is the holding of the Commission of Appeals in Galveston, H. & S. A. Ry. Co. v. Price, 240 S.W. 524.

■ In this connection appellant contends that there was no evidence that Lola Edmiston knew of the railroad crossing at the point of collision, and that therefore the question was one for the jury to determine whether she should have discovered the approaching engine and warned the driver of it. This contention is without merit. Lola Edmiston testified that she did not look for the approach of the engine. She only looked down the road. The presumption is that where 'there was no obstruction of the view of the crossing and the approaching train, that the calamity resulted from the failure of the injured party to exercise due care and caution, and particularly so where the injured party admits that he or she did not look for any approaching train, but only looked ahead. See in addition to above authorities International & G. N. R. R. Co. v. De Ollos, Tex.Civ.App., 76 S.W. 222, error refused; Tucker v. International & G. N. R. R. Co., Tex.Civ.App., 67 S.W. 914, error refused; and Lancaster v. Foster, 260 F. 5, 171 C.C.A. 41. In such circumstances it is held, where the injured person failed to see or hear the approaching train or engine, the view of the crossing and approaching train or engine being open and unobstructed, that the injured person must satisfactorily account for his or her failure to see or hear such approaching train or engine. No effort was made to show that Lola Edmiston did

not know of the crossing, nor that her attention had been excusably attracted from it or the approaching engine, nor that her view of the approaching engine was obstructed. Wichita Valley Ry. Co. v. Fite, Tex.Civ.App., 78 S.W.2d 714; 35 Tex.Jur. 505.

It may be observed, however, that Lola Edmiston had been a resident of the city of Austin for several years prior to the time of the collision, and that the Govalle Beer Garden where she was employed was situated so that if she desired to come into the city proper the usual and best route was over East Sixth street. But even if she did not know of the railroad crossing, due care for her own safety under the facts and circumstances above detailed required her to keep a lookout for any train that might come onto or across the street in front of the automobile in which she was riding, and to warn the driver of the automobile of it. Manifestly, she could not excuse herself for failure to discover the approaching engine and warn the automobile driver of it merely because she did not know of the crossing. In cases like hers, where the undisputed evidence showed that the street and crossing and surroundings were level and smooth; that her view of the street, crossing, and approaching engine was open and unobstructed for more than 800 feet; that the street crossing was not extra hazardous or dangerous; nor did it or anything in any manner obstruct her view of the approaching engine, which she did not see until it was in the middle of the street because she did not look—contributory negligence is established as a matter of law, unless she both alleged and proved some circumstance, obstruction, or reasonable excuse for failure to discover the approaching engine in time to have warned the driver of it. This she did not do, but merely testified that, "I was looking down the road all the time," and did not see the engine until it was in the middle of the street and about 15 feet from the automobile. See above-cited authorities. Lola Edmiston's contributory negligence was predicated upon her failure to exercise ordinary care to see or discover the approaching engine in time to have warned the driver of it; and is distinguishable from some of the cases cited by appellant and holding that where a train is seen approaching the crossing and the issue arises as to whether the injured person exercised reasonable care in attempting to cross, or to warn the driver of the approaching train with knowledge that the train was approaching, such issue is usually a question for the jury. Hines v. Roan, Tex.Civ.App., 230 S.W. 1070; Trochta v. Missouri, K. & T. R. Co., Tex. Com.App., 218 S.W. 1038.

The judgment of the trial court will be affirmed.

Affirmed.