## DAVIS v. SHAFER et al.
### No. 2727.

Court of Civil Appeals of Texas. Eastland.
June 17, 1949.

Rehearing Denied July 8, 1949.

Strasburger, Price, Holland, Kelton & Miller, Dallas, for appellant.

Ben F. Thorpe, Snyder, John E. Sentell, Snyder, for appellees.

GRISSOM, Chief Justice.

Weldon Shafer, A. C. Shafer and Billie Jim Shafer, the latter a minor acting by his next friend, sued Dan Davis for damages resulting from injuries suffered by Weldon and Billie Jim Shafer, and damage to Weldon Shafer's automobile, in a collision between an automobile driven by Weldon Shafer and a gasoline tank truck belonging to Davis, which was being driven by Davis' agent while acting in the course of his employment. Billie Jim Shafer was the fifteen year old brother of Weldon Shafer, age twenty-two, who owned and was driving the Ford automobile in which the Shafers were riding when it collided with the Davis truck. The collision occurred about 150 feet inside the city limits of Snyder. Billie Jim Shafer testified that the brothers bought a sack of candy in Snyder and it was on the front seat between them; that he was not watching the operation of the automobile nor the road; that he had reached over to get a piece of candy out of

a sack and looked up just in time to get a glance at the Davis truck as it suddenly emerged from behind another truck and "jack-knifed" across the road in front of the Shafer car, completely covering the paved portion of the highway, except a small portion on the south edge, Shafer's left, which would permit one side of a car to stay on the pavement as it passed around the south end of the Davis truck. The accident happened about dark on a cloudy day, while mist was falling.

Weldon Shafer's version of the collision was that he was driving west at 25 miles per hour; that near the city limits of Snyder he could see a truck coming east as they proceeded west; that when the Shafers were within about 65 feet of a large cattle truck the Davis gasoline truck suddenly emerged from behind the cattle truck, on its left hand side of the highway, that is, the north side, directly in front of the Shafer car; that the Davis truck stopped on the highway, completely closing the passage on the hard surfaced portion of the highway, except about six feet on the south side; that Weldon swerved his Ford to his right, that is, to the north, and collided with the right hand side of the Davis truck, near its front door; that Weldon was knocked unconscious and Billie Jim had his jaw broken and suffered other serious injuries.

The version of the collision offered by the driver of the Davis truck was that he had been following the cattle truck, which was about 42 feet long, for seven or eight miles and before he got to the city limits, started to go around it; that he pulled to his left, that is, to the north, threw the truck into a gear that gave it more speed, had straightened out and pulled along the side of and even with the cattle truck he was passing when the Shafer automobile, traveling 40 to 50 miles an hour, appeared directly in his path. Whereupon, he says, he cut off the power and pulled to his left, that is, to the north, across the highway, trying to avoid colliding with Weldon Shafer's car.

There is no evidence that Billie Jim had any business in the automobile. He went along with his brother merely for the ride. If there is evidence that raises an issue as to a duty on the part of Billie Jim, as a passenger, to keep a lookout, it is the testimony of the driver of the Davis truck that the Shafer car was traveling between 40 and 50 miles an hour under the circumstances mentioned.

The case was submitted to a jury on special issues which were answered favorably to the Shafers. Judgment was rendered for the Shafers and Davis has appealed.

Issues as to whether the driver of the Davis transport truck failed to keep a proper lookout when he attempted to pass the other truck and as to whether Weldon Shafer failed to keep a proper lookout were submitted. In the preliminary portion of the court's charge, proper lookout was defined as follows:

"By the term 'proper lookout' as that term is used throughout this charge, is meant such a lookout as a person of ordinary prudence would exercise under the same or similar circumstances."

Issue 21, the answer thereto and the definition given in connection therewith were as follows:

"Do you find from a preponderance of the evidence that on the occasion in question that Billie Jim Shafer failed to keep a proper lookout? Answer 'He kept a proper lookout' or 'He did not keep a proper lookout.'

"Answer: He kept a proper lookout.

"In answering the foregoing issue you will be guided by the following definition: By 'proper lookout', for a person riding as a passenger or guest in a car, is that degree of care that the ordinary prudent passenger riding in a car would exercise under the same or similar conditions and circumstances for the protection of his own safety."

Defendant objected to said definition, as follows:

"Defendant objects to the definition of 'proper lookout' given in connection with Special Issue No. 21 for each and all of the following reasons:

"a. Because same places a greater burden upon the Defendant than is placed there by law in that same unduly and unnecessarily draws the attention of the jury

to the fact that Billie Jim Shafer was a passenger or guest in the automobile of Weldon Shafer when such a fact is only one of the circumstances to be considered by the jury in determining whether or not Billie Jim Shafer kept that kind and character of lookout that would have been kept by a person of ordinary prudence under the same or similar circumstances.

"b. Because the definition of proper lookout in connection with a passenger or a guest in an automobile should be the same as the definition of proper lookout for any other person: The fact of being a passenger or guest is only a circumstance from which the jury would determine the kind and character of lookout that should have been kept."

Appellant's first point is:

"The error of the trial court in improperly defining 'proper lookout' in connection with Special Issue No. 21, which said definition unduly and unnecessarily drew the attention of the jury to the fact that Billie Jim Shafer was a passenger or guest in the automobile of Weldon Shafer."

■ Proof that one was a passenger in an automobile at the time of a collision did not, of itself, establish his duty to keep a lookout. Harper v. Texas & P. Ry. Co., Tex.Civ.App., 146 S.W.2d 426, writ ref., and Safeway Stores, Inc., v. Webb et ux., Tex.CivApp., 164 S.W.2d 868, RWM. There must be proof of circumstances indicating a need for the passenger to be on the alert in order to show his duty to keep a lookout. Otherwise, he has the right to rely upon the diligence of the driver in keeping a lookout. The Schuhmacher Co. v. Shooter, 132 Tex. 560, 564, 124 S.W.2d 857; 5 Tex.Jur. 448, 449; Harrison v. Southwest Coaches, Tex.Civ.App., 207 S.W. 2d 159, 162, RNRE.

"Save in exceptional situations, a guest or passenger in a vehicle is not required to keep a constant lookout or to see to it that he shall be in a condition to do so. Thus, a plaintiff riding in the front seat may take his attention off the road to look at the scenery or may turn around to speak to a friend in the back or he may go to sleep or read a book without being guilty of contributory negligence if the driver commits

some negligent act which the plaintiff, had he been on the alert, might have had the opportunity to prevent." Vol. 2 Restatement of the Law of Torts pp. 1282, 1283, Sec. 495.

The foregoing was quoted by Judge Funderburk in International-Great Northern R. Co. v. Lucas, Tex.Civ.App., 123 S.W.2d 760, 764, writ ref., and was quoted with express approval of the Supreme Court, by Judge Smedley in Edmiston v. Texas & N. O. R. Co., 135 Tex. 67, 138 S.W.2d 526, 530.

Billie Jim Shafer may have been entitled to an instruction as to the circumstances that create a duty on the part of a passenger to keep a lookout in order that the jury might properly pass on such issues. See Texas Rules Civil Procedure, rule 277. If so, such an instruction would have been more favorable to Billie Jim Shafer than the definition objected to.

Our Supreme Court, in an opinion by Judge Hickman, in Garcia v. Moncada, 127 Tex. 453, 456, 94 S.W.2d 123, 124, said:

"The question of whether the evidence raised an issue of fact as to the contributory negligence of Garcia in failing to take charge of the operation and bring the car to a stop must be viewed in the light of the standard of conduct required of a guest having no right of control over the car or its operation. A person riding in an automobile as a guest of another is not chargeable with the driver's negligence, but he does owe the duty of ordinary care to avoid injury. As stated in Clarke v. Connecticut Co., 83 Conn. 219, 76 A. 523, 525, 'The law fixes no different standard of duty for him (a passenger in an automobile) than for the driver. Each is bound to use reasonable care.' But, while the standard is the same, the conduct which that standard requires may be, and generally is, very different. Conduct which would constitute ordinary care by a guest may fall far short of ordinary care by a driver. Their duties are different. The facts in evidence clearly raise the issue that Ynguanzo, the host, was negligent in not bringing his car to a stop, but our question is whether they raise such an issue as to Garcia, the guest.

Generally, the question of contributory negligence of a guest, like that of the contributory negligence of any other plaintiff, is one of fact to be determined by the trier of facts. But it is elementary that, absent a duty to perform an act, one cannot be negligent in failing to perform it. If, as a matter of law, no duty is owing, then no issue of fact as to negligence is presented. That a guest in an automobile driven by another owes the duty to warn the driver under certain circumstances is well settled by the authorities. Texas Mexican Ry. Co. v. Hoy, Tex. Com.App., 24 S.W.2d 18; Annotations in 18 A.L.R. 309; 22 A.L.R. 1294; 41 A.L.R. 767; 47 A.L.R. 293; 63 A.L.R. 1432, and 90 A.L.R. 984."

The court concluded:

"We do not announce the general rule that a guest owes no duty under any circumstances to displace the driver and himself assume control of the automobile, but in a case like the one here presented, where there is no evidence that the driver was not in full possession of all of his faculties and fully capable of operating the car, we think it should be held, as a matter of law, and we do so hold, that the guest owes no duty to assume active physical control over the car's operation. On the contrary, in most cases such a course of conduct would be fraught with danger, and would itself constitute negligence or trespass on the part of the guest. It follows that the trial court did not err in refusing to submit to the jury the special issues requested."

The court also quoted with approval the following statement by the Supreme Court of Iowa, Bradley v. Interurban Ry. Co., 191 Iowa 1351, 183 N.W. 493, 495:

"Within reasonable limits the invited passenger in an automobile may reasonably and lawfully rely on the skill and judgment of the driver."

While recognizing that distinctions between the cases may be made, we think the reasoning in the cases hereinafter mentioned is persuasive of the view that Billie Jim Shafer, on request, might have been entitled to have submitted to the jury an explanatory instruction, under R.C.P. 277, as to what circumstances would create a duty on the part of a passenger to keep a lookout. In Dallas Railway & Terminal Co. v. Travis, 125 Tex. 11, 14, 78 S.W.2d 941, 943, the Supreme Court, in discussing the duty of a passenger on a street car, said it was her duty to exercise ordinary care. The court defined ordinary care in the usual manner, as applicable to a passenger. The jury was then told that it was the duty of the railway company "to use a high degree of care to avoid injuring plaintiff; that the failure to use such care constituted negligence on the part of the railway company." The railway company objected to the latter part of said instruction on the ground that it was a general charge, on the weight of the evidence, indefinite and uncertain and did not set out the proper degree of care owing to the passenger by the railway company and that said instruction "gives undue prominence to the degree of care to be used and indicated that the court was of the opinion that the defendant had not performed its duty." The Supreme Court held that there were two different standards of conduct involved, the duty of the passenger to exercise ordinary care and the duty of the railway company to exercise a high degree of care. The court said:

"Previous to the paragraph of the charge complained of, the court had defined a high degree of care, negligence, and ordinary care, *but had not informed the jury under what circumstances nor to whom nor how to apply the rule* of negligence for failure to exercise a high degree of care, nor the rule of negligence for failure to exercise ordinary care. *It was necessary for the court to give the jury some instruction to guide them when applying these two different standards.* In order to distinguish between these different kinds of negligence, the court first told the jury that it was the duty of the injured woman to use ordinary care for her own safety, and that a failure to do so was negligence on her part, and that it was the duty of the street railway company to use a high degree of care to avoid injuring plaintiff, and that a failure to do so was negligence on its part. *The court properly*

*explained to the jury the different rules to be observed by them in determining whether the injured woman was negligent and in determining whether the street car company was negligent.* We do not think it can be said that a general charge was given, merely because the court stated the difference in the kind of negligence referred to therein as based on the legal duty of the respective parties sought to be charged with negligence. *Neither did the charge give such undue emphasis to the degree of care to be exercised by the defendant as was calculated to prejudice its rights.* Ratto v. Bluestein, 84 Tex. 57, 19 S.W. 338; Carter v. Missouri K. & T. Ry. Co., Tex.Civ.App., 160 S.W. 987." (Italics ours.)

In Stanaland v. Traders & General Ins. Co., 145 Tex. 105, 122, 195 S.W.2d 118, 122, the Supreme Court, in an opinion by Judge Taylor, said:

"A permissible method of submitting dependency is to give a simple definition of 'dependent' in connection with a question * * * inquiring whether the claimant was dependent on the deceased at the time of his death, and to add such explanatory instruction as may be required by the facts of the particular case. See Rule 277 and Lumbermen's Reciprocal Ass'n v. Warner, Tex.Com.App., 245 S.W. 664."

In Boaz v. White's Auto Stores et al., 141 Tex. 366, 370, 172 S.W.2d 481, 484, our Supreme Court compared the language in old Art. 2189 and R.C.P. 277. It held that the rule "affords a greater latitude to the trial judge than did the statute, and instructions are now permissible which formerly would have been condemned."

In submitting an issue as to the negligence of a child, it is permissible to refer to the age, intelligence and experience of the child. In J. Weingarten, Inc., v. Carlisle et al., Tex.Civ.App., 172 S.W.2d 170, 173 R.W.M., the definition submitted at the defendant's request, in connection with an issue as to whether a child failed to keep a proper lookout, was:

"By the term 'proper lookout', as that term is used in the above special issue, is meant such a lookout as a person of similar age, intelligence, and experience, in the exercise of ordinary care, would have kept under the same or similar circumstances."

See also City of Fort Worth v. Lee, Tex. Civ.App., 182 S.W.2d 831, 836, affirmed 143 Tex. 551, 186 S.W.2d 954, 159 A.L.R. 125; Hawkins v. Rudco Oil & Gas Co., Tex.Civ. App., 17 S.W.2d 230, 234, RWM; Crosby v. Strain, Tex.Civ.App., 99 S.W.2d 659, 661, writ dis.; Dallas Railway & Terminal Co. v. Davis, Tex.Civ.App., 26 S.W.2d 340; Northern Texas Traction Co. v. Jenkins, Tex.Civ.App., 266 S.W. 175, 179; Stamper v. Scholtz, Tex.Civ.App., 17 S.W.2d 184, 186.

In Davis v. Pettitt, Tex.Com.App., 258 S. W. 1046, 1050, the Supreme Court, in an opinion by Judge Stayton, in a railroad crossing case to recover for injuries to a passenger in an automobile, held that a charge which placed on the passenger the duty to exercise ordinary care to ascertain whether a train was approaching "notwithstanding the fact that he was not driving," was properly refused because whether the passenger owed a duty to keep a lookout depended on whether he relied, and had a right to rely, upon the diligence of the driver.

For an interesting discussion of the question of the right to impute to a minor passenger in an automobile the contributory negligence of an adult driver, see the following: Southwestern Bell Telephone Co. v. Doell, Tex.Civ.App., 1 S.W.2d 501, 505 and Vol. 1, Blashfield's Cyclopedia of Automobile Law p. 1001 [1927 Ed.]; L.R. A.1917F, pp. 1–116. In Vol. 2, Blashfield's Cyclopedia of Automobile Law, p. 1155 [1927 Ed.], it is said:

"The general rule is that the negligence of an adult driver of an automobile, in the management of the machine, which, in concurrence with the negligence of a third person, has caused an injury to a minor passenger, will not be imputed to the minor to prevent his recovery against the third person." See also 4 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., §§ 2496, 2863.

How could a jury know, under the first definition of proper lookout, when and under what circumstances any passenger in an automobile, whether adult or

minor, had a duty to keep a lookout. As stated in Garcia v. Moncada, supra, both the driver and the passenger have the duty to exercise ordinary care, but, while the standard is the same, the conduct which that standard requires of a driver and his guest may be, and generally is, quite different. In the absence of a duty to keep a lookout, Billie Jim Shafer, the passenger, could not have been negligent in failing to do so. However, it is unnecessary for us to decide whether or not Billie Jim Shafer was entitled to such an explanatory instruction. It was undisputed that Billie Jim Shafer was a passenger in the automobile. We think the definition complained of did not give the jury any information it did not already have. The jury knew he was a passenger. The definition given was not, as applied to the facts of this case, materially different from the first definition of proper lookout, in the preliminary portion of the charge. In the first definition, the jury was told that by proper lookout is meant such a lookout as a person of ordinary prudence would exercise under the same circumstances. A person under the same circumstances as Billie Shafer would be a passenger in an automobile. We do not see how the definition complained of could have been harmful to appellant. We think the error complained of did not amount to such a denial of the rights of appellant as was reasonably calculated to and probably did cause the rendition of an improper judgment. R.C.P. 434. Point One is overruled.

Defendant's second point is:

"The error of the trial court in not granting a new trial because of the improper argument of plaintiffs' attorney, appealing to the passion and prejudice of the jury by pointing out that defendant was represented by 'one of the largest law firms of Texas.'"

Hon. John E. Sentell, one of plaintiffs' counsel, made the following statement in his closing argument:

"I was glad to hear my good friend, Mr. Taylor, say that when he gets to this part of the case that he gets nervous. I always do. I have been practicing law about twenty-five years. I had thought that aft-er I had practiced for years—a few years—I would get over this—but I haven't. So when I heard my good friend, Mr. Taylor —connected with one of the largest law firms of Texas—who goes over the State trying big cases—he tries 20 where I try one—I was glad to hear him make such a statement."

No objection was made to the argument at the time and the court was not requested to give any instruction to the jury in connection therewith. Judgment was rendered for the plaintiffs on September 28, 1948. On October 15th the court overruled defendant's motion for a new trial. In defendant's motion for a new trial, said argument of plaintiffs' counsel was set out as above and defendant then stated that said argument was not objected to at the time "but is now objected to because same is an appeal to passion and prejudice, is outside of the record and is a matter that could not have been corrected by proper instruction given by the court at the time to the jury not to consider same." Appellant did not then contend that the argument injected the question of insurance into the case. On December 8th, defendant had approved and filed his bill of exception No. 1 complaining of said argument, wherein, in addition to the objections theretofore made, the defendant contended for the first time that the question of insurance had been thus injected into the case. Said bill recites that "defendant now says" that the argument was calculated to lead the jury to believe that since defendant was represented by a big law firm that there was insurance in the case. Thus it is affirmatively disclosed that the contention that insurance was injected into the case by said argument was first asserted in the trial court on December 8th, long after the defendant's motion for a new trial had been overruled. We think said argument was not reasonably calculated to cause a jury to believe that defendant was protected by insurance. Said argument on its face discloses that it was a preliminary statement to the jury, in reply to a statement made to the jury by defendant's counsel that when he got to the argument in a case he got nervous. See Corn v. Crosby

County Cattle Co., Tex.Com.App., 25 S.W. 2d 290, 293. Plaintiffs' counsel's reply thereto was simply that after twenty-five years of practice he still got nervous when he started to argue a case to a jury; that he had previously thought he would get over it in a few years, but had not, and he was glad to hear that defendant's counsel, who was his good friend and "connected with one of the largest law firms in Texas— who goes over the State trying big cases—" also still got nervous when he started to argue a case. On its face it does not purport to have been intended as an appeal to the passion and prejudice of the jury nor was it reasonably calculated to have that effect. It was probably accepted by the jury for what it purported to be, a friendly reply to opposing counsel in preliminary remarks to a jury, and as meaning nothing more than that, regardless of experience, lawyers get nervous when they start to argue their cases before a jury. In any event, the argument was not objected to at the time and the error therein, if any, we think, could have been removed by proper instruction from the court.

Defendant's third point is as follows:

"The error of the trial court in not granting a new trial because of the improper argument of plaintiffs' attorney, in inferring that defendant's counsel had talked to the man Scrivener and would have put him on the stand if his testimony would have been favorable."

The argument complained of was as follows:

"Mr. Taylor has considerable to say here about why we didn't bring Mr. Scrivener in here. I'm not so sure that I can tell you why we didn't bring him in. He has raised the question but I am a little afraid to do it, to tell you why, but I will say this, that this has been pending for ten months, this suit has been filed for a long time, they have been here all throughout the trial with an assistant, I don't see him here now in the court room, don't you think they haven't talked to Scrivener, why didn't they bring him in here? We brought his condition— this testimony before you, if Scrivener would have contradicted us, don't you think they would have had him in here * * *."

Defendant's objection was "that's not in the record that we ever talked to Scrivener or saw him, that's out of the record. The fact is that they didn't bring him in here * * *." Whereupon, the court instructed the jury not to consider said argument. The record discloses no reason why either side could not have produced Mr. Scrivener as a witness if they desired to do so. It would appear from the argument complained of that defendant's counsel had "considerable to say" to the jury about why the plaintiffs had not produced Mr. Scrivener as a witness and that this argument was in reply to appellant's argument.

We see nothing detrimental to defendant in the suggestion that defendant had talked to Mr. Scrivener. We do not see why it would be calculated to improperly reflect upon defendant, or his counsel, to suggest that he had talked to any person shown to probably know any material fact about the case being tried. Appellant points out no evidence tending to show that Scrivener knew any fact vital to the defense. We have found nothing in the record indicating what Scrivener might have known about the case other than Weldon Shafer's testimony that he was working on a farm for Mr. Scrivener at the time of the accident; that he was supposed to meet him in Dermott; that he drove there to meet him about three o'clock P. M. the day of the collision but did not see him and went on to Snyder and that Weldon went back to work for Scrivener about a month after Weldon was discharged from the hospital and continued working for Mr. Scrivener until three weeks before the trial.

In Missouri Pac. Ry. Co. v. White, 80 Tex. 202, 15 S.W. 808, 811, the Supreme Court said:

"It is customary to permit attorneys to comment upon the absence of witnesses or their non-production, when they are shown to be cognizant of the facts in issue. It is a mere matter of argument, and may be discussed by either side, trusting to the good sense of the jury to properly estimate the value of such arguments. We are not

prepared to say that any injury resulted to defendant by the course of the argument on this point, even if the argument was not properly deducible from the facts. Reversals will not be had merely because of sophistry in argument or fallacious reasoning upon the facts, when it does not appear that the jury were prejudiced thereby. There must, of necessity, be allowed some latitude in debate. The attorney may discuss his case from an erroneous standpoint, but his errors are not errors of the court; the jury is not bound to believe him, or to accept his theories of the evidence. We do not find reversible error in this matter."

In Marek v. Southern Enterprises, Inc. of Texas, 128 Tex. 377, 99 S.W.2d 594, 597, the Supreme Court, in an opinion by Judge Hickman, said:

"We are not in agreement with the Court of Civil Appeals that this was improper argument requiring a reversal of the trial court's judgment. The policemen and the ushers were all employees of defendant on the night plaintiff was injured and were on duty in that theatre. It was a legitimate inference to be drawn from the evidence that, at least, some of these employees who were not called to testify were available as witnesses at the time of trial, although not all of them were then in the employment of defendant. Legitimate inferences from the testimony do not fall in the category of improper argument. Counsel may properly comment on the absence of witnesses when they are shown to be in possession of facts material to the inquiry and when it is shown, or may be reasonably inferred from the evidence, that they are available to be called by the defaulting party. Missouri Pacific Ry. Co. v. White, 80 Tex. 202, 207, 15 S.W. 808; Houston E. & W. T. Ry. Co. v. Boone, 105 Tex. 188, 146 S.W. 533; Houston E. & W. T. Ry. Co. v. Sherman, Tex. Com. App., 42 S.W.2d 241; 22 C.J. pp. 115 and 116, § 56; 17 Tex.Jur. p. 302, § 86." See also 41 Tex.Jur. 782; 17 Tex.Jur. 306 and Ford Motor Co. v. Whitt, Tex.Civ.App., 81 S.W.2d 1032, 1038, Writ ref.

If the argument was subject to the objection made, we think the harmful effect, if any, was removed by the court's instruction not to consider it. See Ramirez v. Acker, 134 Tex. 647, 652, 138 S.W.2d 1054; King v. Federal Underwriters Exchange 144 Tex. 531, 191 S.W.2d 855, 856 and Fauth v. First Nat. Bank of Granbury, Tex. Civ.App., 214 S.W.2d 168, 171.

We conclude that reversible error is not shown. The judgment is affirmed.