Elena CASTILLEJA and minor children,
Appellants,

v.

SOUTHERN PACIFIC COMPANY,
Appellee.

No. 25586.

United States Court of Appeals
Fifth Circuit.

Jan. 23, 1969.

Rehearing Denied Feb. 13, 1969.

Sidney Ravkind, Houston, Tex., Les Mendelsohn, San Antonio, Tex., for appellants.

Harper MacFarlane, Fred C. Meyer, Jr., San Antonio, Tex., for appellee.

Before GOLDBERG and CLAYTON,* Circuit Judges, and HANNAY, District Judge.

GOLDBERG, Circuit Judge:

This is an appeal from a judgment entered upon a general jury verdict in a wrongful death action. The tragedy occurred in Guadalupe County, Texas, when a train of the Southern Pacific Railway struck a truck and killed Ausencio Castilleja, a passenger in the

* Judge Clayton did not participate in the decision of this case. The present opinion is rendered by a quorum of the court pursuant to 28 U.S.C.A. § 46.

truck. The appellants, Castilleja's widow and minor children, were the unsuccessful plaintiffs in the court below. The primary issue involved in this appeal is whether the district court erred when, in the course of charging the jury on the issue of whether Castilleja was contributorily negligent in failing to keep a lookout for trains, it failed to instruct that under Texas law Castilleja had *no* duty to act as a lookout in the absence of exceptional circumstances. We find that this omission was fatally fallible and remand for a new trial.

## I.

Castilleja and Johnny Ortiz, employees of Economy Furniture Company, were engaged in delivering furniture on the unhappy day. Under the usual division of labor, Ortiz would drive the truck and Castilleja would check the invoices and give general directions as to route. In response to these directions, Ortiz turned left off of the highway at the second gravel road and proceeded down this road in a northerly direction for a "little ways," followed a right turn in the road, and proceeded in an easterly direction for another "little while" to a point where the road makes another 90° turn back to the north. At this turn he encountered men attempting to pull a large winch truck out of the mud. Attached to the rear of the winch truck was a chain which stretched across the road. Ortiz halted short of the chain. When it was lowered, he proceeded to the turn in the road and saw a railroad crossing about fifty or seventy-five feet away.

Ortiz pulled up toward the track, and then stopped about one truck length short of it. He looked to the right and to the left. Seeing nothing and hearing nothing, he attempted to cross the track. The progress of the truck was slowed by the poor condition of the road.

The truck had crossed the first rail and was starting over the second when Castilleja screamed, "Peachy, the train!" These words concurred with the first sound of the train's whistle.[1] Ortiz accelerated, but the truck's wheels spun in the gravel and caliche. The truck arrived at the center of the second rail simultaneously with the lead engine of the train. Demolition occurred on impact. Ortiz survived; Castilleja died.

The trial court, in the course of its general charge to the jury, gave the following instruction:

"Now, you are further instructed that if you find from the preponderance of the evidence that the said Ausencio Castilleja failed to keep such a lookout for trains—now, he's the passenger that's in there—sitting on the side of the other one—look out for trains when approaching the grade crossing in question as a person of ordinary prudence would have done under the same or similar circumstances, and that such action on the part of Castilleja was negligence, as that term has been defined to you, and that such negligence was the proximate cause of the collision, then you will find for the defendant railroad as against said plaintiffs, Elena Castilleja, and their minor children."

The appellants objected to this charge because it placed an overly onerous lookout responsibility on Castilleja and because it failed to advise the jury that Castilleja was presumed to have exercised care for his own safety. We agree with the appellants on the lookout issue and disagree on self-safety.

## II.

■ Being *Erie* bound,[2] we must evaluate the substance of the district court's charge in the light of Texas substantive law. Lind v. Aetna Casualty and Surety Co., 5 Cir., 1967, 374 F.2d 377, 380; see Boothe v. Holmes, 5 Cir. 1968, 399 F.2d 495, 500. Our primogenial case is Edmiston v. Texas & N.

---

1. The varied testimony of witnesses placed the train at 200 to 600 feet from the crossing at the time of the whistle blast.

2. Erie R. Co. v. Tompkins, 1937, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

O. R. Co., Tex.1940, 135 Tex. 67, 138 S.W.2d 526. There Edmiston sued the railroad, seeking to recover damages for injuries sustained by his wife in a collision between the automobile in which she was riding as a guest and a railroad switch engine. The railroad argued that the failure of the injured spouse to keep a lookout constituted contributory negligence. The facts were summarized by the Court of Civil Appeals as follows:

"The case was submitted to the jury upon 97 special issues. The jury found the issues submitting discovered peril in favor of appellee railroad. It found that the operatives of the engine were negligent in several particulars alleged, and that each such act of negligence was a proximate cause of the collision and of the injuries to Lola Edmiston. The jury also found that Cecil Ramos, the driver of the automobile, was negligent in several particulars, and that each such negligent act was a proximate cause of the collision; but that neither of such negligent acts of Cecil Ramos was the sole proximate cause of the collision. With respect to the alleged acts of contributory negligence of Lola Edmiston, *the jury found that the whistle of the switch engine was blown before it reached the crossing in question; that Lola Edmiston could have in the exercise of ordinary care heard the whistle in time to have warned the driver of the automobile of the engine's approach, and in time for him to have stopped the automobile before it reached the crossing*, but that her failure to do so was not negligence; that the headlights on the rear end of the switch engine in question were burning as it approached the point of collision; that Lola Edmiston by the exercise of ordinary care could have seen the burning headlights as the automobile approached the crossing in time to have warned the driver to stop the automobile before it reached the crossing, but that the failure of Lola Edmiston to see the headlights and warn the driver was not negligence on her part; *that Lola Edmiston in the exercise of ordinary care could have seen the defendant's switch engine as it approached the crossing in question in time to have warned the driver of the car of that fact*, but that her failure to see the engine and to call the attention of the driver of the automobile to the approaching engine was not negligence on her part; that the automobile was being operated at an unlawful rate of speed at the time it approached the crossing; that Lola Edmiston failed to protest to the driver of the automobile of such speed, but that such failure to protest was not negligence; that Lola Edmiston failed to listen, watch, and look out for trains and engines that might be approaching the crossing as the automobile in which she was riding also approached the crossing, but that her failure to listen, watch, and look out for trains and engines was not negligence; and that it was not negligence for her not to have protested to the driver of the automobile to bring the same to a stop immediately prior to the collision." [Emphasis added.] Edmiston v. Texas & N. O. R. Co., Tex.Civ.App. 1937, 111 S.W.2d 848, 849.

The Court of Civil Appeals agreed with the trial court's apparent finding that as a matter of law the injured spouse was guilty of contributory negligence in failing to keep a lookout as the car approached the crossing. In so holding the court wrote:

"It is the rule in Texas that while the duty of a guest riding in an automobile is not precisely the same as that of the driver of the automobile under all circumstances, still the guest is equally under the duty to look out for his or her own safety as far as possible, and is expected to see obvious danger and to warn the driver of it. That is, because the guest rider has no absolute control over the acts of the driver of any automobile, the neg-

ligence of the driver is not in all instances imputable to the guest rider, still, in railroad crossing collisions, the guest rider is required to exercise reasonable care for his or her own safety, and to keep a lookout for an approaching train and to warn the driver of it. In such circumstances it is reasonable to suppose that the driver will heed the warning and do all in his power to avoid the collision. It may therefore be said that in approaching a railroad crossing in an automobile, a guest rider, in not looking out and warning the driver of an approaching train, does not act as an ordinarily prudent person would act under the same or similar circumstances. [cases cited].

\*       \*       \*       \*       \*

"It may be observed, however, that Lola Edmiston had been a resident of the city of Austin for several years prior to the time of the collision, and that the Govalle Beer Garden where she was employed was situated so that if she desired to come into the city proper the usual and best route was over East Sixth street. But even if she did not know of the railroad crossing, due care for her own safety under the facts and circumstances above detailed required her to keep a lookout for any train that might come onto or across the street in front of the automobile in which she was riding, and to warn the driver of the automobile of it. Manifestly, she could not excuse herself for failure to discover the approaching engine and warn the automobile driver of it merely because she did not know of the crossing. In cases like hers, where the undisputed evidence showed that the street and crossing and surroundings were level and smooth; that her view of the street, crossing, and approaching engine was open and unobstructed for more than 800 feet; that the street crossing was not extra hazardous or dangerous; nor did it or anything in any manner obstruct her view of the approaching engine, which she did not see until it was in the middle of the street because she did not look—contributory negligence is established as a matter of law, unless she both alleged and proved some circumstance, obstruction, or reasonable excuse for failure to discover the approaching engine in time to have warned the driver of it." 111 S.W.2d at 851, 853.

The case went up to the Commission of Appeals which reviewed the Civil Appeals decision and reversed. The Commission of Appeals, whose opinion was adopted by the Supreme Court of Texas, instructs us:

"It is our opinion, after carefully reading the statements of facts, that the Court of Civil Appeals erred in concluding that the undisputed evidence shows that Mrs. Edmiston was guilty of contributory negligence as a matter of law in failing to listen, watch and look out for the switch engine, in failing to call the attention of the driver to the approaching switch engine and in failing to look out for the engine when, by the exercise of ordinary care, she could have seen the burning headlight.

"According to Mrs. Edmiston's testimony, she did not see the switch engine until it was in the middle of the street and the automobile was within a few feet of the crossing, when she immediately cried out: 'Lookout—there is the engine.' The fault attributed to her is failure to listen and keep a lookout.

"The rules with respect to the duty of one riding as a guest in an automobile to keep a lookout have been stated and applied in several cases, \* \* \* [cases cited]. The substance of the rules announced by these decisions is briefly stated as follows: While the duty of the guest is measured by the same standard as that of the driver, which is that he is bound to use reasonable care, the care which a person of ordinary prudence would use under like circumstances, the con-

duct required by the standard is generally very different. The driver is in charge of the automobile and the law imposes upon him the duty when driving on a public highway or street to use care constantly in keeping a lookout. Southland-Greyhound Lines, Inc., v. Richardson, 126 Tex. 118, 124, 86 S.W.2d 731. The guest, however, not being in charge of the operation of the automobile, is not required constantly to keep a lookout. Ordinarily he may reasonably and lawfully rely on the driver to keep watch.

"Associate Justice Funderburk, writing the opinion in International-Great Northern R. Co. v. Lucas, Tex. Civ.App., 123 S.W.2d 760, 764, in which application for writ of error was refused, quoted with approval the following paragraph from the Restatement of the Law of Torts (vol. 2, pp. 1282, 1283, section 495), which, in our opinion, is a correct declaration of the rule established by the decisions in this state as to the amount of care required of a guest in an automobile: 'Save in exceptional situations, a guest or passenger in a vehicle is not required to keep a constant lookout or to see to it that he shall be in a condition to do so. Thus, a plaintiff riding in the front seat may take his attention off the road to look at the scenery or may turn around to speak to a friend in the back or he may go to sleep or read a book without being guilty of contributory negligence if the driver commits some negligent act which the plaintiff, had he been on the alert, might have had the opportunity to prevent. However, if the plaintiff knows that at a particular point there will be a peculiar danger, which he has no reason to believe that the driver if unaided will perceive, the plaintiff may be guilty of negligence if he does not keep himself in a position to call the danger to the attention of the driver. Save under such exceptional circumstances, a plaintiff is entitled to trust the vigilance and skill of his driver unless he knows

from past experience or from the manner in which the car is being driven on the particular trip, that the driver is likely to be inattentive or careless.' * * *" 138 S.W.2d at 529–530.

See also Schumacher Co. v. Shooter, Tex. 1939, 132 Tex. 560, 124 S.W.2d 857; Larson v. Missouri-Kansas-Texas R. Co., Tex.Civ.App.1952, 254 S.W.2d 215 (writ ref'd n. r. e.); Davis v. Shafer, Tex. Civ.App.1949, 222 S.W.2d 145 (writ ref'd n. r. e.); Gulf, C. & S. F. R. Co. v. Jones, Tex.Civ.App.1949, 221 S.W.2d 1010 (writ ref'd n. r. e.); Alpine Telephone Corporation v. McCall, Tex.Civ. App.1946, 195 S.W.2d 585 (writ ref'd n. r. e.); Harper v. Texas & P. R. Co., Tex.Civ.App.1940, 146 S.W.2d 426 (writ ref'd); Restatement (Second) of Torts § 495, comments c, d and f (1965); cf. Drake v. Driscol, 5 Cir. 1959, 267 F.2d 274.

■ The duad of appellate opinions in the *Edmiston* case clearly teach that in Texas a passenger has a duty to keep a lookout only in exceptional circumstances. The district court should have instructed the jury accordingly, and its failure to do so constitutes reversible error. In Lind v. Aetna Casualty and Surety Co., 5 Cir. 1967, 374 F.2d 377, 380–381, we read:

"One of the most important instructions requested and not given related to the duty of a guest passenger in an automobile (such as Mrs. Lind was in this case)—that she was under no duty to supervise the driving of her husband's vehicle and not obligated to look out for sudden or unexpected dangers which might arise since she had the right to place reliance upon the driver of the vehicle in which she was riding. * * *

"Rule 51, Federal Rules of Civil Procedure, authorizes any party to file written requests that the court instruct the jury on the law as set forth in the requests. Where written interrogatories are submitted to the jury, Rule 49(a) requires the court to give the jury 'such explana-

tion and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue.' 'If the judge properly and fully states the law applicable to the case, refusal to give specified requests or further requests is not improper.' 2B, Barron and Holtzoff (Wright ed. 1961), Federal Practice and Procedure § 1102, and where a state-created right is to be enforced, of course the state law must be looked to for the substance of the instructions. 2B, Barron and Holtzoff (Wright ed. 1961), Federal Practice and Procedure § 1105. If the requested instruction in accord with a party's contention is consistent with the evidence in the case, it must be granted unless the subject matter has been adequately covered in the court's charge. Richardson v. Walsh Const. Co., 3 Cir., 1964, 334 F.2d 334. Judge Brown pointed out in this Circuit's decision in Marshall v. Isthmian Lines, Inc., 5 Cir., 1964, 334 F.2d 131, that ' * * * it was not enough to leave the whole thing within the vague contours of a general charge with the inescapable boiler-plate instructions on negligence and the like,' and further that 'In a Federal District Court, where the Judge is no mere moderator receiving formal instruction-requests to be passed, conduit-like, to the jury, the Judge is the master of the proceeding. It is to be the Court's charge, not an aggregation of requests from the parties. The Judge has an obligation to charge on the essential elements of the case and instruct the jury as to the law on matters which developments of the trial have made significant and important. * * * Professor Wright sounds this tone of obligation well:

'It is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth.' 2B Barron and Holtzoff, Federal Practice and Procedure § 1105, at 470 (Wright ed. 1961).'

\* \* \* \* \*

" * * * Under proper instructions as to the law, resolution of the issues would have been possible, but the jury never had a chance under these instructions. We, therefore, have a firm conviction that a mistake has been committed by the court, and though the jury found that neither driver was negligent and that an unavoidable accident occurred, whether it would have reached such a result with adequate instructions on the law, no one can say. Nevertheless, a fair trial requires, under the circumstances here, that sufficient instructions on Louisiana law relating to automobile intersectional collisions be given to the jury, and the failure to do so is reversible error requiring a new trial."

### III.

■ Castilleja would further stigmatize the charge because the court failed to instruct the jury that under Texas law it is presumed that the injured person was exercising due care for his own safety when the accident occurred. See MacDonald v. Skinner, Tex.Civ.App. 1961, 347 S.W.2d 950, 955. With commendable candor Castilleja's counsel informs us that the only Texas case in point holds that the presumption of self-care should not be the subject of a court instruction to the jury. In Armstrong v. West Texas Rig Co., Tex.Civ.App. 1960, 339 S.W.2d 69, 74 (writ dism. agr.), we read:

"This brings us to a consideration of appellants' Point 4, in which it is urged that the court erred in refusing to submit plaintiff's special requested instruction, to the effect that a legal presumption existed that the deceased exercised ordinary care for his own safety on the occasion in question, and that said presumption must

be rejected by legal and competent evidence by preponderance of the evidence thereof.

"We are of the opinion that such a presumption may not properly be the subject of an instruction to the jury. The sole and only effect of this presumption, and others like it, is to fix the burden of producing evidence. They are not evidence of something to be weighed along with the evidence. [cases cited]"

■ Although a contrary conclusion is suggested by learned commentary and respectable authority from elsewhere, see McCormick on Evidence §§ 314–317 (1954); State of Maryland v. Baltimore Transit Co., 4 Cir., 1964, 329 F.2d 738, cert. denied, 379 U.S. 842, 85 S.Ct. 80, 13 L.Ed.2d 47, reh. denied, 379 U.S. 917, 85 S.Ct. 259, 13 L.Ed.2d 189, we are required by *Erie* to take the state law as we find it. Consequently we hold that the district court correctly refused to give the requested instruction on the presumption of self-care.

### IV.

■■ The railroad argues that, notwithstanding any errors in the trial court's instructions, we should affirm the judgment on the ground that the evidence establishes as a matter of law that there were exceptional circumstances and therefore that Castilleja was contributorily negligent. We find this contention to be without merit.

This conclusion from a congery of facts that there were exceptional circumstances which would have imposed upon a passenger the duty to act as a lookout is usually a question of fact which is reserved for the jury rather than a question of law to which digest or

key numbers can give the definitive answer. See Ricketson v. Seaboard Airline Railroad Co., 5 Cir. 1968, 403 F.2d 836 (November 15, 1968); Jines v. General Electric Company, 9 Cir. 1962, 303 F.2d 76, 79. We find nothing in this record which compels us to usurp the normal function of the jury and to hold as a matter of law that the circumstances were exceptional.[3] Castilleja was the invoice reader of the day, but this did not deputize him as a surrogate driver. There is no evidence that Castilleja was any more privy to the topology of the area around the crossing than was the driver. The mention in the invoice of the railroad crossing was direction oriented and not danger oriented; it was simply listed in the invoice as a physical fact, not as a hazard. Clearly, knowledge that a railroad crossing is being approached does not automatically make the passenger a lookout; lookouts are not automated in this way. Harper v. Texas & P. R. Co., Tex.Civ. App.1941, 146 S.W.2d 426, 428 (writ ref'd). Thus we conclude that the circumstances were not as a matter of law exceptional, although there is evidence in the record from which a jury might so find. Cf. Louisville & N. R. Co. v. Tucker, 6 Cir., 1954, 211 F.2d 325, modified, 215 F.2d 227; Edmiston v. Texas & N. O. R. Co., Tex.1940, 135 Tex. 67, 138 S.W.2d 526.

As we have discussed *supra*, we are of the opinion that the district court committed reversible error when it failed to instruct the jury that, save under exceptional circumstances, a passenger is entitled to trust the vigilance of the driver and has no duty to act as a lookout.

Reversed and remanded for a new trial.

---

3. Although there be ambivalence elsewhere, our Court has been clear and stentorophonic in enunciating the rule that although state law governs the elements of a cause of action, the sufficiency of the evidence for jury consideration is a matter of federal law. Helene Curtis Industries, Inc. v. Pruitt, 5 Cir. 1967, 385 F.2d 841, 850, cert. denied 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed. 652; Revlon, Inc. v. Buchanan, 5 Cir. 1959, 271 F.2d 795, 800, 81 A.L.R.2d 222.